George HANKINS *v.* Larry McELROY, Individually, and d/b/a Mac's Auto Sales; and Lawyers Surety Corporation

92-1376                                          855 S.W.2d 310

Supreme Court of Arkansas
Opinion delivered June 7, 1993
[Rehearing denied July 5, 1993.]

*Diana M. Maulding*, for appellant.

*Taylor & Montgomery*, by: *Joel Taylor*, for appellees.

DONALD L. CORBIN, Justice. Appellant, George Hankins, appeals a judgment of the Pulaski Circuit Court, declaring that appellee, Lawyers Surety Corporation, is not liable on a bond it issued in favor of its principal, Larry McElroy d/b/a Mac's Auto Sales. We find error in the trial court's judgment and reverse.

Appellant and McElroy are used car dealers licensed in accordance with the Arkansas Motor Vehicle Commission Act, Ark. Code Ann. §§ 23-112-101 *et. seq.* (Repl. 1992). Appellant engaged in several business transactions with McElroy which are

the subject of this case. Appellee Lawyers Surety Corporation (Lawyers) is the surety which issued a penal bond, naming McElroy as principal, in compliance with the motor vehicle dealer licensing statutes. *See* Ark. Code Ann. § 23-112-603 (Repl. 1992).

Appellant filed suit against McElroy alleging various allegations of fraud, conversion, and breach of contract relating to certain notes receivable as well as to the sales of a Camaro and a GMC truck. Appellant's complaint also included appellee Lawyers as a defendant and sought declaratory relief for payment under the bond Lawyers issued with McElroy as principal. Relying on Ark. Code Ann. § 23-112-302 (Repl. 1992), appellant claimed he was entitled to payment under the bond because McElroy's actions were sufficient to warrant the suspension or revocation of McElroy's car dealer's license. Lawyers' answer admitted liability under the bond for the $2,115.00 in damages arising from the sales of the Camaro and the GMC truck.

Appellant obtained a default judgment against McElroy for a total amount of $25,869.00, which includes $23,754.00 on the claims relating to the notes receivable, $1,000.00 on the claim for the Camaro, and $1,115.00 on the claim for the GMC truck. The default judgment also included court costs of $101.00 and an attorney's fee of $350.00. The judgment, costs, and fees were to bear 6% interest. The trial court disposed of appellant's request for declaratory relief in an order entered separate from the default judgment. That order declared that the bond could not be used to satisfy appellant's judgment. This appeal followed.

Appellant makes five arguments for reversal of the judgment. We do not reach the merits of the arguments. We must reverse and dismiss because appellant has not exhausted his administrative remedies. *Arkansas Motor Vehicle Comm'n* v. *Cantrell Marine, Inc.*, 305 Ark. 449, 808 S.W.2d 765 (1991).

After July 1, 1989, all regulatory authority of dealers of used motor vehicles was transferred from the Arkansas Motor Vehicle Commission to the Revenue Division of the Department of Finance and Administration (DF&A). Ark. Code Ann. § 23-112-601 (Repl. 1992). The Reporter's Notes to section 23-112-601 indicate that all bonds posted by presently licensed used motor vehicle dealers were transferred from the Motor Vehicle

Commission to the Revenue Division of DF&A, to be regulated in accordance with section 23-112-603. Thus, it is the licensing and bonding requirements of section 23-112-603 that are applicable to this case.

Section 23-112-603 provides that an applicant for license as a motor vehicle dealer in used vehicles must file a corporate surety bond in the penal sum of $25,000.00, payable to the State of Arkansas as an indemnity for any loss sustained by any person by reason of the acts of the bonded person when such acts constitute grounds for the suspension or revocation of his license. Section 23-112-603 further provides that:

> [t]he proceeds of the bond shall be paid upon receipt by the Director of the Department of Finance and Administration of a final judgment from an Arkansas court of competent jurisdiction against the principal and in favor of an aggrieved party.

Appellant has obtained a default judgment in his favor against McElroy. Thus, the quoted portion of section 23-112-603 provides him with an administrative remedy for seeking payment under the bond — presentment of the default judgment to the Director of DF&A.

The record does not reveal that appellant availed himself of this administrative remedy. Instead of presenting his judgment to the Director of DF&A, appellant sought declaratory relief in the circuit court. It is well established that litigants must exhaust their administrative remedies prior to seeking a declaratory judgment because declaratory judgment actions are intended to supplement rather than replace ordinary causes of action. *Rehab Hosp. Serv. Corp.* v. *Delta-Hills Health Sys. Agency, Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985). Moreover, a basic rule of administrative procedure requires that an agency be given the opportunity to address a question before resorting to the courts. *See Truck Transp. Inc.* v. *Miller Transporters, Inc.*, 285 Ark. 172, 685 S.W.2d 798 (1985). There is no doubt that seeking payment under the bond of a licensed dealer of used motor vehicles falls within the jurisdiction of DF&A. Section 23-112-603. Therefore, appellant should have availed himself of this administrative remedy and given DF&A an opportunity to address the issue presented to the circuit court for declaratory

judgment. Clearly, this is the procedure the legislature intended to be followed when it delegated regulatory jurisdiction of used motor vehicle dealers to DF&A in Ark. Code Ann. §§ 23-112-601 to -604 (Repl. 1992).

We are mindful of the exceptions to the exhaustion of remedies doctrine as restated in *Cantrell Marine*, 305 Ark. 449, 808 S.W.2d 765. There, this court noted that the exhaustion doctrine does not apply when it would be futile to pursue an administrative remedy or where there was no genuine opportunity to do so. As was the case in *Cantrell Marine*, we cannot say that either exception applies because the record does not indicate that appellant ever even attempted to pursue any administrative action. Here, there is no indication in the record that appellant ever presented the default judgment to DF&A and sought payment under the bond. Had DF&A denied appellant's request for payment under the bond, appellant could then have sought review of DF&A's actions by seeking judicial review in Pulaski County where state agencies are subject to suit pursuant to Ark. Code Ann. § 16-60-103 (1987). *See Sikes* v. *General Publishing Co.*, 264 Ark. 1, 568 S.W.2d 33 (1978). Therefore, we cannot say there was no opportunity for appellant to seek his administrative remedy or that it would have been futile to do so.

Accordingly, we hold appellant failed to exhaust his administrative remedies. We reverse and dismiss the judgment without prejudice to allow appellant to seek his administrative remedy before DF&A. *Cantrell Marine*, 305 Ark. 449, 808 S.W.2d 765.

Reversed and dismissed.

HOLT, C.J., NEWBERN and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I disagree that the appellant, George Hankins, has failed to exhaust an administrative remedy and would reach the merits.

The remedy referred to by the majority is found in a single sentence at the end of a section on license requirements:

> The proceeds of the bond shall be paid upon receipt by the Director of the Department of Finance and Administration of a final judgment from an Arkansas court of

competent jurisdiction against the principal and in favor of an aggrieved party.

Ark. Code Ann. § 23-112-603 (Repl. 1992).

I have serious doubts that this one sentence is intended to provide an administrative remedy. For one thing, the sentence is unclear. Is the Director of DFA to conduct a hearing on the legitimacy of the payment or simply perform a ministerial act of noting the bond claim? The statute is vague on this point, all of which begs the question: What is the remedy that Hankins should have availed himself of?

The majority raises the administrative remedy point on its own. Neither party did so in their briefs. Indeed, at oral argument, *both parties* deemphasized the importance of DFA's role. Counsel for Hankins said the judgment was sent to DFA, though she admitted that this action was not part of the record. More importantly, though, counsel for Lawyers Surety Corporation admitted that DFA had adopted no rules defining its role related to bond payments and that, moreover, his experience with DFA in these proceedings is that it viewed itself merely as a "conduit." The circuit court, in its findings, also noted that no DFA rule had been presented to him.

In sum, not only is the statute unclear as to DFA's role, but DFA itself, according to counsel for the surety, does not view its function as remedial.

The majority relies on *Arkansas Motor Vehicle Comm'n* v. *Cantrell Marine, Inc.*, 305 Ark. 449, 808 S.W.2d 765 (1991), but that case is distinguishable. There, Cantrell Marine was denied a motor vehicle dealer license by the Motor Vehicle Commission. It failed to pursue its clear administrative remedies before the Commission, and we held that lapse to be fatal to an appeal.

In the case at bar, however, whether an administrative *remedy* exists is questionable, DFA has promulgated no rules establishing procedures for pursuit of a remedy, and DFA views its role as a "conduit" in such matters. Not only would it have been futile for Hankins to request an administrative remedy from DFA, one apparently did not exist. This was a non-issue to the parties, and I disagree that the case should turn on this point.

I respectfully dissent.

HOLT, C.J., and NEWBERN, J., join.