WESTERN GROVE SCHOOL DISTRICT *v.* Joe TERRY, II

93-1271                                                  885 S.W.2d 300

Supreme Court of Arkansas
Opinion delivered October 17, 1994

*Brazil, Clawson, Adlong, Murphy & Osmet*, by: *William Clay Brazil*; and *Martin Law Firm, P.A.*, by: *Thomas A. Martin*, for appellant.

*Mitchell, Blackstock & Barnes*, by: *David L. Ivers* and *Clayton R. Blackstock*, for appellee.

ROBERT L. BROWN, Justice. This case concerns the reinstatement of a teacher/coach, appellee Joe Terry, II, according to the terms of his 1992-93 contract with appellant Western Grove School District. The School District attempted to change that contract both as to services and pay for the 1993-94 school year. The circuit court ordered the reinstatement. The School District now appeals and asserts two points of error: (1) the circuit court erred in applying the Teacher Fair Dismissal Act (Ark. Code Ann. § 6-17-1501, *et seq.* (Repl. 1993)) to the facts of this case; and (2) Terry failed to avail himself of a hearing before the School Board which was his exclusive remedy. We disagree that these points constitute error, and we affirm the reinstatement order of the circuit court.

On March 11, 1992, Terry entered into a Teacher's Contract with the School District for the 1992-93 school year. At the time Terry was a non-probationary teacher/coach who was certified as a teacher. His contract described these services to be performed:

Teacher of Physical Ed. and Health and High School Social Studies

High School Basketball Coach

The time period for the contract was August 24, 1992, to June 4, 1993, and the compensation to be paid was $28,550.

For the 1992-93 school year, Terry taught one elementary physical education class, one health class, and four additional physical education classes which in actuality were basketball practices for a girls' senior and junior team and a boys' senior and junior team. In November 1992, Terry was approached about giving up the two girls' basketball teams with a concomitant reduc-

tion in pay. He refused. A girls' basketball coach was hired, nonetheless, in December 1992 and assumed the coaching of the two girls' teams. Terry's compensation was not reduced at that time.

On March 11, 1993, the Western Grove School Board met and voted to divest Terry of his coaching responsibilities for the 1993-94 school year and to reduce his pay by $6,000. According to minutes of the board meeting, the $6,000 represented coaching stipends of $1,500 per basketball team. The next day, March 12, 1993, Superintendent Jack C. Robinson notified Terry of the School Board's action by certified letter and enclosed a new Teacher's Contract for the 1993-94 school year. That contract specified Terry's services to be:

Secondary Ed

Health and Social Studies

The time period covered was from August 12, 1993, to May 16, 1994, and compensation was to be $22,750.

On April 12, 1993, Terry wrote to the superintendent that he intended to be employed by the School District as a teacher/coach the following school year. Superintendent Robinson wrote back the next day that he deemed Terry's letter to be a resignation. Terry replied in writing on April 16, 1993, that he had not resigned. Additional correspondence ensued between the two men along the same lines.

On May 12, 1993, Terry filed a petition for writ of mandamus to compel the School Board to reinstate him "on at least the same salary and on at least the same terms as in the 1992-93 school year" pursuant to the Teacher Fair Dismissal Act. He included a prayer for declaratory relief and for damages. The School Board responded that Terry's exclusive remedy was to request a hearing on the matter before the board, and the board also moved to dismiss the petition for failure to exercise that exclusive remedy. Following a hearing, the circuit court entered an order denying the motion to dismiss and granting the writ of mandamus, declaratory relief, and reinstatement. In doing so, the court found that the nonrenewal of Terry's contract violated the terms of the Teacher Fair Dismissal Act and was arbitrary and capricious.

The School District argues as its first point on appeal that its action against Terry was merely a reassignment of duties — not a nonrenewal — and that the Teacher Fair Dismissal Act was not applicable. The facts do not bear this out.

We first observe that Terry was a teacher holding a teaching certificate as a condition of his employment. Ark. Code Ann. § 6-17-1502(a)(1) (Repl. 1993). His contract combined his teaching and coaching duties and provided for a total salary. Indeed, his teaching and coaching duties merged in basketball practice where the student/athletes received physical education credit. No separate provision for "extracurricular activities" was provided in the contract. Terry, as a teacher/coach, fell within the ambit of Teacher Fair Dismissal Act protection. *Lamar Sch. Dist. No. 39* v. *Kinder*, 278 Ark. 1, 642 S.W.2d 885 (1982).

We turn next to the Teacher Fair Dismissal Act itself which provides in part:

> (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the next school year succeeding the date of termination fixed therein, which renewal may be made by an endorsement on the existing contract instrument, unless by May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed or, unless during the period of the contract or within ten (10) days after the end of the school year, the teacher shall deliver or mail by registered mail to the board of directors his or her resignation as a teacher, or unless such contract is superseded by another contract between the parties.

> (b) Termination, nonrenewal, or suspension shall be only upon the recommendation of the superintendent. A notice of nonrenewal shall be mailed by registered or certified mail to the teacher at the teacher's residence address as reflected in the teacher's personnel file. The notice of recommended nonrenewal of a teacher shall include a simple but complete statement of the reasons for such recommendation.

Ark. Code Ann. § 6-17-1506 (Repl. 1993).

■ The School District's proposed 1993-94 Teacher Contract for Terry was not on the same terms or for the same salary as the contract for the previous year. The salary was reduced by about 20 percent and the duties were curtailed. Because of this, the case differs markedly from *Chandler* v. *Perry-Casa Pub. Sch. Dist. No. 2*, 286 Ark. 170, 690 S.W.2d 349 (1985). In that case, the teacher wanted an assignment as a secondary math teacher but was assigned as a computer instructor. No reduction in compensation was at issue. We noted that a teacher could not always be assigned to duties of that teacher's preference and that the assignment by the school district appeared to be reasonable. In the case at bar, we agree with the circuit court that what took place was not a reassignment of duties but a nonrenewal of Terry's contract.

■ The issue then becomes whether the Superintendent and School Board complied with the notice requirements of the Teacher Fair Dismissal Act which mandate that a superintendent give a prior notice of recommended nonrenewal to the teacher. Ark. Code Ann. § 6-17-1506 (Repl. 1993). In certain cases prior to 1989, we held that substantial compliance with the notice requirements sufficed. *See, e.g., Murray* v. *Altheimer-Sherrill Pub. Sch.*, 294 Ark. 403, 743 S.W.2d 789 (1988); *Lee* v. *Big Flat Pub. Sch.*, 280 Ark. 377, 658 S.W.2d 389 (1983). However, in 1989, the General Assembly enacted Act 625 which amended the Teacher Fair Dismissal Act and added this sentence to Ark. Code Ann. § 6-17-1503 (Repl. 1993):

> A nonrenewal, termination, suspension, or other disciplinary action by a school district shall be void unless the school district strictly complies with all provisions of this subchapter and the school district's applicable personnel policies.

No notice was given to Terry until after the action taken by the School Board on March 11, 1993, to dramatically alter his contract. This certainly was not strict compliance with § 6-17-1506. Hence, the action of the School Board was void.

■ Furthermore, this court has specifically held that the notice of proposed nonrenewal under the Teacher Fair Dismissal

Act must be given to a teacher before the school board's decision not to renew. *Green Forest Pub. Sch.* v. *Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985); *Burden* v. *Hayden*, 275 Ark. 93, 627 S.W.2d 555 (1982). The reasoning behind these two cases is readily understandable. After a board has made its decision, the teacher is confronted with the much more daunting task of reversing formed opinions and formal action by the board members. The prejudice to the teacher under such circumstances is obvious and real.

We are mindful that this court has referred to substantial compliance with the Teacher Fair Dismissal Act in a case handed down after Act 625 of 1989. *See Teague* v. *Walnut Ridge Schools*, 315 Ark. 424, 868 S.W.2d 56 (1993). The *Teague* case concerned whether a teacher's delivery of a resignation letter to the school principal which was addressed to the school board equated to delivery of the letter to the school board as the Act required. The principal passed the contents of the letter on to the school board by memorandum the next day. We concluded that the Act had been complied with and emphasized that our holding was based partially on the facts of that case. We reiterate today that the *Teague* case was decided on a unique set of facts. Substantial compliance no longer governs Teacher Fair Dismissal Cases, as the General Assembly has spoken unequivocally in Act 625 of 1989 that there must be strict compliance with the Act before a nonrenewal, termination, or suspension may be put into effect.

We hold that the circuit court was entirely correct in finding that the actions of the School Board, including the altered contract for the 1993-94 school year, constituted a nonrenewal by the Board without prior notice to Terry and was void under the Act. We further hold that the circuit court correctly concluded that Terry's contract for the 1993-94 school year must be on the same terms and for the same salary as the 1992–93 contract.

The School District next urges that if this was a nonrenewal of his contract, Terry was fatally remiss in bypassing the administrative hearing process set out in the Teacher Fair Dismissal Act. *See* Ark. Code Ann. §§ 6-17-1509, 6-17-1510 (Repl. 1993). The District notes that § 6-17-1510 describes this process as the "exclusive remedy" for any nonprobationary teacher aggrieved by a board decision. However, this procedure presup-

poses a proper notice of a nonrenewal recommendation by the superintendent to the teacher so that the teacher may request a hearing before board action. Here that was not done.

The School District points us to *Green Forest Pub. Sch.* v. *Herrington, supra,* and *Murray* v. *Altheimer-Sherrill Pub. Sch., supra,* as examples of cases where hearings were requested by teachers after board action. But the fact that other parties in other cases may have seen fit to request hearings after the board has acted does not decide the issue in the School District's favor. We agree with the circuit court that there is no legal requirement that a teacher ask for a board hearing after the board has already taken action. Again, the burden on the teacher under such circumstances would be oppressive, and the effort perhaps even futile, following a board decision on the issue. *See Hankins* v. *McElroy*, 313 Ark. 394, 855 S.W.2d 310 (1993). Terry appropriately filed his petition for relief in circuit court.

Affirmed.