MANILA SCHOOL DISTRICT NUMBER FIFTEEN *v.*
Robert R. WHITE

99-30                                              992 S.W.2d 125

Supreme Court of Arkansas
Opinion delivered June 17, 1999

*William C. Brazil* and *Amy Brazil,* for appellants.

*Barrett & Deacon,* by: *D. P.Marshall Jr.* and *James F. Gramling Jr.,* for appellees.

ANNABELLE CLINTON IMBER, Justice. By petition for writ of mandamus filed in the Circuit Court of Mississippi County, Arkansas, Mr. Robert R. White sought to compel the Manila School District No. 15 and the members of the District's Board of Education to renew his contract for the 1998-99 school year under the same terms and conditions as his 1997-98 contract. Specifically, Mr. White asserted that the contract offered by the District for the 1998-99 school year constituted a nonrenewal of his earlier contract and that the District's failure to comply with the provisions of the Teacher Fair Dismissal Act of 1983 resulted in an automatic renewal of his contract. Ark. Code Ann. § 6-17-1501 *et seq.* (1993 Repl.). The trial court granted Mr. White's petition for writ of mandamus and motion for summary judgment. In support of its argument on appeal that the trial court erroneously applied the Teacher Fair Dismissal Act, the District contends that its actions constituted a reassignment of duties under Ark. Code Ann. § 6-17-303 (Repl. 1993) rather than a nonrenewal under Ark. Code Ann. § 6-17-1501 *et seq.* We disagree and affirm the trial court.

■ ■ The purpose of the writ of mandamus is to enforce an established right or to enforce the performance of a duty. *Chandler v. Perry Casa Public Schools,* 286 Ark. 170, 690 S.W.2d 349 (1985). By summary judgment, the trial court ruled that Mr.

White had an established legal right to renewal of his employment contract for the 1998-99 year on the same terms as the 1997-98 contract. The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Stockton v. Sentry Ins.*, 337 Ark. 507, 989 S.W.2d 914 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997).

The material facts are not in dispute. Mr. White was employed by the Manila School District as a teacher and coach for thirteen years. His duties always included coaching and teaching classes in physical education. He never taught core curriculum subjects, such as English, science, math, geography, or social studies, although he occasionally instructed courses in driver's education or supervised study hall. Mr. White had a successful record as a coach. Under his supervision, the Manila senior high basketball team won several district and conference championships. Likewise, Mr. White led Manila's golf team to championships at the district and state level. He was also named coach of the year several times. During his thirteen years with the Manila School District, Mr. White never received anything but satisfactory formal evaluations of his work.

Mr. White's contract with the District for the school year 1997-98 provided that he would perform "the duties that are generally performed by a teacher including but not limited to, the

following specific duties: as assigned by the Superintendent."[1] The time period for the contract was August 14, 1997 to May 22, 1998, and the compensation to be paid was a base salary of $37, 567 ( revised in May 1998 to $38, 986). According to the last paragraph of the contract entitled "OTHER CONDITIONS OF EMPLOYMENT," $4,000 of the base salary was "for a coaching supplement." Although not reflected in the contract, Mr. White also had the opportunity to earn extra income by driving the basketball team bus to and from games and by running basketball camps for the District during the summer.

On April 8, 1998, the District's Superintendent, Mr. Roland Wells, contacted an attorney, Mr. W. Paul Blume, about the feasibility of not renewing Mr. White's coaching duties. On that same day, Mr. Blume advised Superintendent Wells in writing that, given Mr. White's particular circumstances, it was extremely unlikely that a nonrenewal would be affirmed by a court. As an alternative, Mr. Blume recommended a lateral reassignment without a reduction in salary, specifically mentioning reassignment to the position of Director of the Alternative School. Prior to the meeting with Mr. Blume, Superintendent Wells had written Mr. White on March 5, 1998 and expressed the District's concerns about Mr. White's performance as a coach. The March 5, 1998 memorandum listed seven concerns and expected improvements, all involving Mr. White's approach to coaching, and three other changes to be implemented as of March 16, 1998. On April 13, 1998, Mr. White responded to the memorandum, setting forth his disagreement with most of the District's concerns.

Also on April 13, 1998, the Manila School Board voted to renew Mr. White's contract for the 1998-99 school year and simultaneously voted to accept the Superintendent's recommendation that Mr. White be reassigned to the position of Alternative School Director/Teacher. Based upon Mr. White's education and experience, including his ability to impose strict discipline, the

---

[1] The following information which is not a part of the contract is contained in a boxed section at the top of the contract: "Grade or subject to be taught *Secondary/Coach/ P.E.*"

District believed that he would perform well as the Director/ Teacher of the Alternative School.

The 1998-99 contract offered to Mr. White provided that he would "serve as a teacher and other duties as assigned by the Superintendent," followed by a specific designation of "Alternative School Director/Teacher." The time period for the contract was August 17, 1998 to May 21, 1999, and the compensation to be paid would be the same base salary as the year before. However, the last paragraph of the 1998-99 contract entitled "OTHER CONDITIONS OF EMPLOYMENT," provided that $4,000 of the base salary was for "Alternative School Director."

By letter dated April 16, 1998, Superintendent Wells sent the proposed contract for 1998-99 to Mr. White. On May 5, 1998, Mr. White informed Superintendent Wells that he accepted employment for 1998-99 on the same terms as the 1997-98 contract. By memorandum dated May 7, 1998, Superintendent Wells advised Mr. White that the Board of Education had reassigned him to the position of Alternative School Director/Teacher at the same salary for the 1998-99 school year.

The District asserts as its first point on appeal that the trial court erred when it concluded that the District could not reassign Mr. White to the position of Alternative School Director/Teacher for the 1998-99 school year, and relies upon Ark. Code Ann. § 6-17-303, which provides that:

> District school boards shall have the authority to assign and reassign or transfer all teachers in schools within their jurisdiction upon the recommendation of the superintendent.

However, the issue presented by this appeal is whether the District's actions constituted a nonrenewal of Mr. White's 1997-98 contract, as opposed to a mere reassignment, thereby triggering the provisions of the Teacher Fair Dismissal Act. The District's second point on appeal asserts that its actions do not fall within the Act.

The Teacher Fair Dismissal Act provides in pertinent part:

> (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in

writing on the same terms and for the same salary, unless increased or decreased by law, for the next school year succeeding the date of termination fixed therein, which renewal may be made by an endorsement on the existing contract instrument, unless by May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed or, unless during the period of the contract or within ten (10) days after the end of the school year, the teacher shall deliver or mail by registered mail to the board of directors his or her resignation as a teacher, or unless such contract is superseded by another contract between the parties.

Ark. Code Ann. § 6-17-1506. Strict compliance with the terms of the Act is required. *See* Ark. Code Ann. § 6-17-1503.

■ We agree with the trial court that this case is governed by our decision in *Western Grove School District v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994). In *Terry, supra,* the appellant was "reassigned" to secondary education, health and social studies, which he had previously taught, but was completely divested of his coaching responsibilities. Additionally, his compensation was reduced by $6000.00. *Terry, supra.* The school district argued that its action was not a nonrenewal, but merely a reassignment of duties, and thus that the Teacher Fair Dismissal Act did not apply. *Id.* We disagreed, stating:

> The school district's proposed 1993-94 Teacher contract for Terry was not on the same terms or for the same salary as the contract for the previous year. The salary was reduced by about 20 percent and the duties were curtailed. Because of this, the case differs markedly from *Chandler v. Perry-Casa Publ Sch. Dist. No. 2*, 236 Ark. 170, 690 S.W.2d 349 (1985). In that case, the teacher wanted an assignment as a secondary math teacher but was assigned as a computer instructor. No reduction in compensation was at issue. We noted that a teacher could not always be assigned to duties of that teacher's preference and that the assignment by the school district appeared to be reasonable. In the case at bar, we agree with the circuit court that what took place was not a reassignment of duties but a nonrenewal of Terry's contract.

The facts of this case correspond to those in *Terry, supra,* because Mr. White's 1998-99 contract was not on the same terms as his

contract for the previous year. The 1997-98 contract's reference to the coaching supplement clearly indicated Mr. White's position as a coach for the District. The removal of the coaching supplement language in the 1998-99 contract did not merely curtail Mr. White's coaching duties. Rather, his coaching duties were completely eliminated and he was reassigned to the Alternative School. Furthermore, the 1998-99 contract specifically added the job designation of Alternative School Director/Teacher and provided that $4,000 of the base salary was "for Alternative School Director." Such a position is administrative and falls outside of the teaching duties that were subject to assignment by the Superintendent under the 1997-98 contract. Accordingly, we hold that the District's actions constituted a nonrenewal of Mr. White's contract, and thus required compliance with the notice provisions of the Teacher Fair Dismissal Act.

The District argues that this case falls under our decision in *Chandler, supra,* instead of *Terry, supra,* because there was no reduction in Mr. White's salary. This assertion misinterprets our decisions in those cases. In *Chandler, supra,* and *Terry, supra,* the court considered both the terms and compensation in determining the reasonableness of the reassignment. While the amount of Mr. White's base salary did not change, his position as a coach was completely eliminated. Thus, as in *Terry, supra,* this case also "differs markedly" from the situation we addressed in *Chandler, supra.* It should also be noted that *Chandler* was decided prior to the adoption of Ark. Code Ann. § 6-17-1503 which requires strict compliance with the provisions of the Teacher Fair Dismissal Act. The reassignment here was not a reasonable one. The elimination of Mr. White's coaching duties and his reassignment as Alternative School Director/Teacher was not a reassignment of duties but a nonrenewal of Mr. White's contract.

The District concedes that it did not comply with the notice provisions of the Teacher Fair Dismissal Act. Where proper notification is not achieved before a decision is made not to renew a teacher's contract, the contract is automatically renewed on the same terms as for the previous year. Ark. Code Ann. § 6-17-1506(a) (Repl. 1993). The trial court correctly ruled that Mr. White was legally entitled to a contract for the 1998-99 school

year on the same terms as the previous year, and the issuance of mandamus was appropriate.

Affirmed.

GLAZE, J., concurs on the basis that notice was not provided appellee as required under the Teacher Fair Dismissal Act. Appellant failed to renew appellee's contract. Whether the Appellant's reassignment is reasonable or not is immaterial and not needed to decide this case.