## Leon HARRIS *v.*
## ALTHEIMER UNIFIED SCHOOL DISTRICT

CA 05-646                                                    227 S.W.3d 437

### Court of Appeals of Arkansas
### Opinion delivered February 8, 2006

*Kearney Law Offices*, by: *John L. Kearney*, for appellant.

*Laser Law Firm*, by: *Dan F. Bufford* and *Brian A. Brown*, for appellee.

WENDELL L. GRIFFEN, Judge. This is an appeal from an order denying appellant Leon Harris's motion for summary judgment and granting summary judgment in favor of appellee Altheimer Unified School District (school). Harris does not argue that genuine issues of material fact remain with regard to his case. Rather, he claims that he is entitled to summary judgment because it is undisputed that the school failed to comply with the Teacher Fair Dismissal Act by failing to renew his teaching contract, by failing to provide him written notice of the nonrenewal, and by failing to provide him a hearing. We affirm the grant of summary judgment in the school's favor because Harris was not a "teacher" within the meaning of the Act.

Harris holds a bachelor's degree in physical education. He worked for the school as a long-term substitute teacher and an

assistant boys' basketball coach during the 2001-2002 and 2002-2003 school years. The school hired Harris pursuant to a provisional license issued by the Arkansas Department of Education, effective August 1, 2001, through April 1, 2003.[1] Although Harris's provisional license expired on April 1, 2003, during the 2002-2003 school year, according to the deposition testimony of William Thomas, superintendent for the school district, Harris was qualified to continue teaching until the end of the school year as a substitute teacher because neither a substitute teacher nor an assistant coach in Arkansas is required to have a teaching license.

Harris's initial contracts for the 2001-2002 and 2002-2003 school years are each labeled "School Employee's Contract" for "Classified Employees." Each of his original contracts describes his employment duties as "Assisting with Boys Basketball" and "Other duties assigned by the Superintendent." His pay was determined based on his status as a "classified" employee pursuant to these contracts; thus, during these contract years, Harris was not paid at the rate a licensed teacher would be paid and was not paid from the teacher salary fund.

However, because the Department of Education chose to honor appellant's provisional letter as a provisional license for the 2001-2002 and 2002-2003 school years, appellant was actually qualified to receive pay from the teacher salary fund for those two contract years. Accordingly, the school paid Harris a total of $25,892.50 in back pay and drafted two new contracts for those years, reflecting the rate at which Harris should have been paid.

---

[1] Thomas explained, via deposition testimony, that a provisional *letter* allows a person six months to take the Praxis 1 and Praxis 2 Exams, which are teacher licensing exams that a person must pass in order to obtain a provisional teacher's license. He further explained that pursuant to a provisional teacher's *license*, a person can teach for three years. If the person thereafter passed the Praxis 3 exam, he would receive a nonprovisional five-year license. It is undisputed that Harris never successfully completed these requirements and that the school district was aware of that fact.

The undated provisional letter that was issued to Harris was faxed to the school on November 19, 2003. It clearly states that "this letter will serve as a six month, nonrenewable letter of provisional eligibility for Leon Harris." The letter further states that, if certain other contingencies were met, Harris may receive a "provisional license." However, despite the fact that the letter expressly stated that it was valid for six months, it also erroneously listed the effective dates as August 1, 2001 through April 1, 2003. Nonetheless, for reasons not explained in the record, the Arkansas Department of Education chose to honor this provisional letter as a provisional license for the time period from August 1, 2001, through April 1, 2003.

Each contract is dated June 10, 2003, but each indicates effective dates for the 2001–2002 and 2002–2003 school years, respectively. Unlike Harris's original contracts, these new contracts are each labeled "Teacher's Contract." The new contract for the 2001–2002 school year indicated that Harris was "To teach Secondary Physical Education." The new contract for the 2002–2003 indicated that Harris was "To teach Secondary Physical Education and Assist with Jr. Boys and Sr. Boys Basketball." Nonetheless, Harris's teaching license had not been renewed at the time these "new" contracts were executed.[2]

Ultimately, Harris filed suit against the school because the school did not rehire him for the 2003–2004 school year. He originally raised numerous claims but voluntarily nonsuited all of the claims except his claim under the Teacher Fair Dismissal Act (Act), found at Ark. Code Ann. § 6-17-1502 *et seq.* (Repl. 1999) & (Supp. 2001).[3] Harris filed a motion for summary judgment claiming that because the Act requires written notice of the nonrenewal of a teacher's contract as well as a hearing on the matter and because the school conceded that it not did not provide him with either, he was entitled to judgment for backpay and was entitled to be reinstated at his former job.

The school filed a competing motion for summary judgment, arguing that the Act was inapplicable because Harris "was

---

[2] Because Harris could not obtain a valid Arkansas teaching license before the 2003–2004 school year commenced, on August 25, 2003, he ostensibly obtained a Class 2 teaching license from the state of Montana that was effective from July 1, 2003, through June 30, 2008. Through Arkansas's policy of reciprocity, the Class 2 Montana license would have allowed Harris to teach as a licensed teacher in Arkansas. Based on the Montana license, on August 27, 2003, the Arkansas Department of Education issued Harris a teacher's license that was effective from January 1, 2003 through December 31, 2007.

However, the state of Montana subsequently determined that Harris's Class 2 license was issued in error because Harris had not completed all of the requirements to obtain such a license under Montana law. Therefore, Montana changed Harris's Montana license to a Class 5 license, which did not allow him to teach as a licensed teacher in Arkansas. In February 2004, after a hearing on the matter, the Arkansas Department of Education revoked Harris's Arkansas teaching license that had been issued via reciprocity. He did not appeal the Department's ruling.

[3] Harris also argued, *inter alia*, that the school was also required to given him notice of nonrenewal pursuant to the Arkansas Public School Fair Hearing Act, found at Ark. Code Ann. § 6-17-1701 *et seq.* (Repl. 1999). However, during the summary-judgment hearing, Harris moved to nonsuit his claims "for all other claims except violation of the Fair Dismissal Act" and he does not now argue that the Fair Hearing Act applies.

not nonrenewed or terminated by the school, but was simply not allowed to teach as a teacher because his provisional license expired and state law mandated that all teachers have a valid license." On November 19, 2004, a hearing was held on the parties' competing motions for summary judgment, during which the school admitted that it did not provide Harris notice of nonrenewal pursuant to the Act because it determined that he was not a "teacher," as that term is defined under the Act.

On March 16, 2005, the trial court entered an order granting summary judgment in the school's favor and a letter order explaining its ruling. In the letter order, the trial court explained its reasoning, in part, as follows:

> The rights afforded by the [Teacher Fair Dismissal Act][4] were created to protect "certified teachers" who are suspended, nonrenewed, or terminated due to reasons outside their certification. No fact question arises concerning whether the Altheimer Unified School District provided the plaintiff a timely notice, valid reasons, or a proper hearing as required by the Act. The Act is not applicable. Therefore, the Plaintiff's Motion for Summary Judgment is denied and the Defendant's Motion for Summary Judgment is granted.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact." Ark. R. Civ. P. 56(c). Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Riverdale Dev. Co., LLC v. Ruffin Bldg. Sys., Inc.*, 356 Ark. 90, 146 S.W.3d 852 (2004). The parties in this case do not argue that any facts are in dispute, only that each is entitled to summary judgment as a matter of law.

The parties' arguments are straightforward. Harris asserts that because he was a full-time, nonprobationary teacher for the

---

[4] The trial court incorrectly referred to the Teacher Fair Dismissal Act as "The Teachers Fair Hearing Act." In its discussion of "The Teachers Fair Hearing Act," however, the court specifically cited to § 6-17-1501 *et seq.*, which is the statutory citation for the Teacher Fair Dismissal Act. Thus, it is clear that in this portion of its ruling, the court was referring to the Teacher Fair Dismissal Act and not the Public Fair Hearing Act.

contract year 2002-2003 and because he had a provisional teaching license during that contract year, he was a "teacher" within the meaning of the Act. As such, he argues, the school was required to provide written notice of nonrenewal of his contract and a hearing on the nonrenewal. Because the school conceded that it did neither, he argues that he is entitled to summary judgment. The school counters that it was not required to provide Harris written notice of nonrenewal of his contract or a hearing because he was not employed as a certified teacher pursuant to the Act.

Under the Act, no public school in Arkansas may employ a teacher who is not licensed by the Arkansas State Board of Education. Ark. Code Ann. § 6-17-401 (Repl. 1999). Further, the Act defines a "teacher" as "any person, exclusive of the superintendent or assistant superintendent, employed in an Arkansas public school district who is required to hold a teaching certificate from the Department of Education as a condition of employment." Ark. Code Ann. § 6-17-1502(a) (Repl. 1999). The provisions of the Act are to be strictly construed. *Western Grove Sch. Dist. v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994).

The main provision of the Act at issue in this case is § 6-17-1506 (Repl. 1999), which governs contract nonrenewal, and provides that:

> (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and for the same salary, unless . . . :
>
> (1) by May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed[.]
>
> . . .
>
> (b)(1) Termination, nonrenewal, or suspension shall be only upon the recommendation of the superintendent.
>
> (2)(A) A notice of nonrenewal shall be delivered in person to the teacher or mailed by registered or certified mail to the teacher at the teacher's residence as reflected in the teacher's personnel file.

The first rule of statutory construction is to construe a statute just as it reads, giving the words their ordinary and usually

accepted meaning in common language. *Arkansas Pharmacist's Ass'n, Inc. v. Arkansas State & Public School Life & Health Ins. Bd.*, 352 Ark. 1, 98 S.W.3d 27 (2003). By the plain terms of § 6-17-1502(a), whether a person is a "teacher" is not contingent upon whether his teaching license was in effect when notice of nonrenewal is due under the Act, but rather, is contingent upon whether the position the person held during the contract year required a teaching certificate as a condition of employment. Despite Harris's licensure status, he was not a "teacher" within the meaning of the Act because the position for which he was hired did not require certification.[5] As such, we affirm the grant of summary judgment in the school's favor.

The case of *Sheets v. Dollarway School District*, 82 Ark. App. 539, 120 S.W.3d 119 (2003), is instructive. In that case, a certified teacher worked for the Dollarway school district from 1999-2001. He worked under the 1999-2000 contract as a coach, a position that required a teaching certificate. However, he refused to sign the 2000-2001 contract, which did not involve coaching duties, which offered him a position as a certified classroom teacher, and which reduced his pay. Instead, he endorsed his previous contract and worked in another position that did not require him to hold a teaching certificate, but for which he received the pay of a teacher.

Even though the *Dollarway* appellant received the pay of a teacher during the 2000-2001 school year, the *Dollarway* court held that he did not meet the definition of "teacher" under the Act, because for that school year, he held a position that did not require a teaching certificate. Thus, pursuant to *Dollarway*, even a person who holds a teaching certificate is not entitled to pursue a remedy under the Act if he is employed in a position for which a teaching certificate is not required.

---

[5] Despite appellant's assertion that he was a "full-time, nonprobationary teacher," if he was a "teacher" within the meaning of the Act, he was clearly a probationary teacher because he had worked for the school only two years. Ark. Code Ann. § 6-17-1502(2) (Repl. 1999) (providing that any teacher who has not completed three successive years of employment in the school district is a probationary teacher under the Act). However, even probationary teachers are entitled to notice of nonrenewal. *See Nordin v. Hartman Public Sch.*, 274 Ark. 402, 625 S.W.2d 483 (1981) (holding under a prior version of the Act, in which the definitions of "teacher" and "probationary teacher" were virtually identical to the current Act, that probationary teachers are entitled to notice of nonrenewal but are not entitled to know the specific reasons therefore or to a hearing on the matter).

Similarly here, even if Harris was certified during the 2001-2002 school year, and even though he received teacher pay under the new contracts, he did not meet the definition of "teacher" under the Act because he did not occupy a position that required a teaching license. Harris was hired as a substitute teacher. Clearly, the label assigned to his position is not dispositive as to whether he was, in fact, a teacher under the Act. *See Love v. Smackover Sch. Dist.*, 322 Ark. 1, 907 S.W.2d 136 (1995) (holding that the appellant was a teacher under the Act, regardless of the fact that she was designated as a "half-time, long-term replacement," where her contract with the school required her to be certified). Nonetheless, the uncontradicted deposition testimony of William Thomas, the school's superintendent, supports that Harris was *not* required to hold a teaching certificate in order to serve as a substitute teacher and as an assistant with the basketball program.[6] Thus, unlike the contract in the *Smackover* case, none of Harris's contracts required him to hold a certificate as a condition of employment.

Further, even though Harris executed two "teaching contracts" for the 2001-2002 and 2002-2003 school years and received back pay from the teacher salary fund, the "teaching contracts" did not change the requirements of the position for which he had been hired. Therefore, regardless of how the contracts under which Harris was paid were labeled or how much money he was ultimately paid or from what fund, the fact remains that the positions he held did not require a teaching certificate.

Simply put, it is employment in a position that requires a teaching certificate that entitles a person to remedies under the Teacher Fair Dismissal Act — not signing a document labeled a "teacher's contract" or receiving pay from the teacher salary fund. Harris did not meet the definition of "teacher" under the Act because he did not occupy a position that required a teaching license. Accordingly, we hold that the trial court did not err in

---

[6] The record leaves no genuine issue of material fact unresolved as to whether Harris was hired as a long-term substitute teacher. For example, a letter from the school's superintendent to the Arkansas Department of Education lists Harris as one teacher who was hired as a long-term substitute; the minutes from the school board meetings from September 19, 2002, indicate that board hired Harris as long-term substitute teacher; and the Arkansas Department of Education sent a letter to the school dated November 5, 2001, stating that Harris "is considered a long-term sub and must pass the Praxis I and Praxis II tests."

denying Harris's motion for summary judgment and in granting summary judgment in favor of the school.

Affirmed.

VAUGHT and BAKER, JJ., agree.