



# SUPREME COURT OF ARKANSAS

No. CV–13–962

|  |  |
|---|---|
| JASPER SCHOOL DISTRICT NO. 1 OF NEWTON COUNTY; KERRY SAYLORS, INDIVIDUALLY, AND IN HIS CAPACITY AS SUPERINTENDENT OF THE JASPER SCHOOL DISTRICT; AND WANDA MANN, INDIVIDUALLY, AND IN HER CAPACITY AS ASSISTANT SUPERINTENDENT OF THE JASPER SCHOOL DISTRICT<br><br>APPELLANTS<br><br>V.<br><br>ANITA COOPER<br><br>APPELLEE | **Opinion Delivered** September 25, 2014<br><br>APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT [NO. CV-2012-34]<br><br>HONORABLE WILLIAM M. PEARSON, JUDGE<br><br>AFFIRMED. |

## JOSEPHINE LINKER HART, Associate Justice

Prior to being fired, Anita Cooper had been employed as principal of the Oark, Arkansas schools. Cooper brought suit against appellants Jasper School District No. 1 of Newton County (District) and Kerry Saylors, individually, and in his capacity as a superintendent of the District. In her complaint, Cooper asserted in part that appellants had failed to comply with the Teacher Fair Dismissal Act (TFDA) and had failed to provide her with due process. The circuit court reinstated Cooper to her job as principal, awarded her $64,998 in damages, and found Saylors was individually liable. On appeal, the District and Saylors raise three issues. Appellants first argue that the circuit court erred in finding that there was not substantial compliance with the TFDA. Second, appellants argue that the circuit court

SLIP OPINION

erred in finding Cooper had a property right in her position as principal of the Oark schools. Third, appellants argue that the circuit court's award to Cooper was excessive and amounted to an award of "double retirement." We affirm.

Cooper was a twenty-nine-year employee in the Oark schools. The Oark schools were annexed by the District in 2004. In 2009, Cooper became the principal of all Oark schools. On February 28, 2011, Cooper signed a "Teacher's Contract" with the District for the period of July 1, 2011, to June 30, 2012, in which she agreed to "perform services" as "K–12 Principal, Oark." Under the contract provision labeled "OTHER CONDITIONS OF EMPLOYMENT," the contract further provided, "This contract is contingent upon the teacher having a valid teaching license. Other duties as assigned by the administration."

On August 26, 2011, Cooper submitted a grievance claiming she was denied the right to create a master schedule for classes to be offered at Oark and that she was "written up" by the assistant superintendent, Wanda Mann. On August 29, 2011, Saylors wrote Cooper a letter that noted he had met with her on August 22, 2011, to address matters that included, among other concerns, "irregularities in the Oark master schedule." Saylors wrote, "I expect to see improvement in your leadership of the Oark campus. Failure to do so may result in further disciplinary actions which could be reassignment of duties or termination of your contract with the Jasper School District."

Following a meeting of the District's Board of Directors (Board), on September 9, 2011, Cooper was removed from her duties as principal of Oark schools and assigned to a school campus in Kingston, Arkansas, where she was to serve as the principal of in-school

2

SLIP OPINION

suspensions. On September 27, 2011, Saylors responded in writing to Cooper's grievance, stating that it was not valid. Saylors also notified Cooper in writing that she was suspended with pay and that he would recommend to the Board that her employment contract be terminated. In his notice, Saylors listed nine reasons as bases for the termination:

1. The Oark master schedule failed to reflect all 38 units required by standards and assurances in that the following units were not present: (a) civics/American government, (b) transitions math;

2. Oark high school failed to have a minimum of one student enrolled in the following classes: (a) performing arts, (b) transitions math, and (c) dc3 and dc4;

3. Six of seven Oark seniors were not enrolled in the required classes to fulfill their curriculum requirements for smart core curriculum or to be eligible for graduation;

4. Two students were enrolled as juniors and only had credits for sophomore standing;

5. Students were not correctly entered in APSCN to reflect signed smart core waivers;

6. Six students had received high school credit while in the 8th grade for classes other than algebra I without issuance of a state waiver;

7. You gave the seniors inaccurate information when you told them not to worry, that you would have their parents sign the common core form;

8. Your lack of professional knowledge regarding ADE standards and graduation requirements; and

9. Oark elementary schedule failed to have the required minutes for physical education and the required minutes of daily instructions.

Following a hearing on November 30, 2011, the Board terminated Cooper's employment.

Cooper appealed the Board's decision to the circuit court. In her complaint, Cooper alleged that she was a teacher for the purposes of the TFDA and that the District failed to

SLIP OPINION

comply with the TFDA. Cooper alleged in part that she did not receive mandated annual performance reviews, that she was not notified in writing of problems that could lead to the termination or nonrenewal of her contract, and that there was no documentation of efforts that had been undertaken to assist her to correct the causes for potential termination or nonrenewal of her contract. Cooper also alleged that by terminating her employment, the District had breached the employment contract and had violated the Due Process Clause of the Fourteenth Amendment by depriving her of constitutionally protected property and liberty interests without due process. She sought reinstatement, damages, punitive damages, and costs and attorney's fees.

Following trial, the court reversed the Board's decision. Specifically, the court found that Cooper was a "teacher" for the purposes of the TFDA, that assigning Cooper to the Kingston campus constituted a nonrenewal of her contract, and that she was not given notice of the nonrenewal as required by the TFDA. The court further found that the District failed to substantially comply with the TFDA by failing to conduct annual performance reviews, failing to bring to her attention the problems identified as the nine reasons for termination found in Saylors's letter, and failing to document the efforts undertaken to assist her to correct the causes for termination. The court also found that the District had breached her contract of employment. The court further found that the evidence demonstrated that Saylors violated Cooper's protected property right in her continued employment when he removed her as the Oark principal and transferred her to Kingston, and therefore, Saylors was not entitled to qualified immunity. The court awarded $64,998 in damages and reinstated Cooper to her

SLIP OPINION

position. The court also found that Cooper was not deprived of a liberty interest and was not entitled to punitive damages. The court also dismissed a claim Cooper made regarding a violation of the Freedom of Information Act and dismissed her claims against Mann. The District and Saylors appealed.

In the first point on appeal, appellants assert that the circuit court erred in finding that Cooper's transfer to the Kingston campus constituted a nonrenewal of her contract. In the same point, appellants also argue that the District was not required to provide annual performance reviews. Further, appellants argue that, because Cooper was not a teacher, appellants were not required to make or document any efforts to assist Cooper with the problems identified as a potential cause for termination, and that, contrary to the circuit court's findings, there was "ample evidence" that Cooper was being evaluated and that those evaluations were documented. To support this latter contention, appellants cite generally to a series of written reprimands, Cooper's responses, emails, and the August 29, 2011 letter from Saylors to Cooper. Finally, appellants list several findings in the circuit court's order that they contend are erroneous.

In considering Cooper's TFDA claim, we note that the TFDA requires "just and reasonable cause" for the nonrenewal or termination of a teacher's contract. Ark. Code Ann. § 6-17-1503(a)(1) (Repl. 2013). Further, a "nonrenewal, termination, suspension, or other disciplinary action by a school district shall be void unless the school district substantially complies with all provisions" of the TFDA and "the school district's applicable personnel policies." Ark. Code Ann. § 6-17-1503(c). The remedy for "any nonprobationary teacher

SLIP OPINION

aggrieved by the decision made by the board of directors shall be an appeal therefrom to the circuit court." Ark. Code Ann. § 6-17-1510(d)(1) (Repl. 2013). At the circuit court, "[a]dditional testimony and evidence may be introduced on appeal to show facts and circumstances showing that the termination or nonrenewal was lawful or unlawful." *Id.*

Our standard of review in matters involving the TFDA is limited to whether the circuit court's decision was clearly erroneous. *Russell v. Watson Chapel Sch. Dist.*, 2009 Ark. 79, at 4, 313 S.W.3d 1, 3. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* at 5, 313 S.W.3d at 3. Facts in dispute and determinations of credibility are within the province of the fact-finder. *Id.*, 313 S.W.3d at 3.

We conclude that the circuit court did not clearly err in finding that appellants failed to bring to her attention the problems identified as the nine reasons for termination found in the September 27, 2011 letter, and failed to document the efforts undertaken to assist her to correct the causes for potential termination as required by the TFDA. This holding is dispositive of the first point on appeal, and we need not consider the other arguments made by appellants on this point.

Cooper was a "teacher" for the purposes of the TFDA. A "teacher" is defined as "any person, exclusive of the superintendent or assistant superintendent, employed in an Arkansas public school district who is required to hold a teaching license from the State Board of Education as a condition of employment." Ark. Code Ann. § 6-17-1502(a)(2) (Repl. 2013). Cooper's contract of employment established that she was a teacher because the contract

required that she hold a teaching license.

The TFDA further provides that "if a superintendent or other school administrator charged with the supervision of a teacher believes or has reason to believe that the teacher is having difficulties or problems meeting the expectations of the school district or its administration and the administrator believes or has reason to believe that the problems could lead to termination or nonrenewal of contract, the superintendent or other school administrator shall" bring, in writing, "the problems and difficulties to the attention of the teacher involved." Ark. Code Ann. § 6-17-1504(b)(1) (Repl. 2013). The superintendent or other school administrator must also "[d]ocument the efforts that have been undertaken to assist the teacher to correct whatever appears to be the cause for potential termination or nonrenewal." Ark. Code Ann. § 6-17-1504(b)(2). We have stated that the TFDA "contemplates and fairness requires that superintendents and other school administrators should not only bring problems and difficulties to the attention of the teacher in writing but should also fully document the efforts undertaken to correct the problems." *Murray v. Altheimer-Sherrill Pub. Sch.*, 294 Ark. 403, 409, 743 S.W.2d 789, 792 (1988).

The circuit court found that the August 29, 2011 reprimand issued to Cooper by Saylors did not comply with the statute, as it lacked any documentation or evidence of efforts that were undertaken to assist Cooper to correct the cause for potential termination, and aside from the allegation of "irregularities in the Oark master schedule" were unrelated to the nine reasons set forth in Saylors's September 27, 2011 letter. The court concluded that there was

SLIP OPINION

no evidence of efforts to assist Cooper with the alleged scheduling irregularities following Saylors's August 29, 2011 letter and her removal to the Kingston campus on September 9, 2011. The court further noted that the other exhibits were related to efforts by Cooper and Mann to resolve scheduling problems. The circuit court's characterization of the letters and other documentation does not leave this court with a firm conviction that an error has been committed. Instead, the record supports the circuit court's findings, and we cannot conclude that the circuit court's decision was clearly erroneous. Accordingly, we affirm the circuit court's decision on this point.

For the next issue and as noted above, the circuit court found that the evidence demonstrated that "Saylors understood and knew he violated Ms. Cooper's protected property right in her continued employment when he removed her as the Oark principal and transferred her to Kingston without a hearing," and therefore, Saylors was not entitled to qualified immunity. The court further found that Cooper had an "expectation in meaningful employment as principal of Oark Schools or other duties as assigned by the administration," and that Saylors "acted unreasonabl[y] in this transfer as it was to a meaningless and useless position as principal of in-school suspension." The court further found that a "reasonable official would have understood that such a transfer violated Ms. Cooper's property rights." The court further observed that Saylors testified that his "decision to recommend termination of Ms. Cooper's contract was made the same day he transferred her to Kingston on September 9, 2011," and that this was "an attempt to get Ms. Cooper out of the way to identify

SLIP OPINION

shortcomings in the Oark schedule and attribute and isolate those to Ms. Cooper."

In their second point, appellants assert that while Cooper may have had a property interest in her contract, she had no property interest in her position as principal of Oark public schools. They assert that Cooper's positions at Oark and Kingston were administrative positions with the same salary, and that the TFDA and Cooper's own contract permitted the transfer. Essentially, appellants argue that neither Arkansas law nor Cooper's employment contract created a property interest in a particular assignment.

In *Buchanan v. Little Rock School District of Pulaski County*, 84 F.3d 1035, 1038 (8th Cir. 1996), the United States Court of Appeals for the Eighth Circuit addressed the issue of whether a principal of an Arkansas school had a property interest in her employment as a principal. The court wrote that an employee has a property interest in employment under the due-process clause if she has a legitimate claim of entitlement to it. *Id.* at 1038. The court noted that a claimant must demonstrate that there were rules or mutually explicit understandings that support a claim of entitlement to a position. *Id.* Further, the court observed that a protected property interest must be derived from a source independent of the Constitution, such as state law, and that a contract may create a property interest. *Id.*

As part of its analysis, the *Buchanan* court considered whether the principal's contract explicitly created a property interest in being a principal, noting that Arkansas law required that contracts be construed in a manner that gives effect to all clauses. *Id.* at 1039. In *Buchanan*, the principal, Karen Buchanan, had been moved from one principal position to another, and then

SLIP OPINION

reassigned to an administrative position. In considering Buchanan's contract, the court noted that she had agreed to "perform services as assigned by the Superintendent" and that her "primary responsibility" was identified on the next line of the contract as "elementary principal." The *Buchanan* court held that to read the latter provision "as a limitation on the superintendent's power of assignment would go beyond the words of the contract and nullify the assignment clause." *Id*. at 1039. Further, the court held that a revision to Buchanan's contract following her move to the second principal position that listed a specific campus as her "site" did not contain an express guarantee of the position and did not imply that she would serve at that site for the entire period. *Id*. The court held, "This document itself was a revision of her initial contract, and its language does not support a justifiable expectation that she would not be reassigned again." *Id*.

In considering Arkansas law on whether the principal had a property right, the *Buchanan* court considered the case of *Chandler v. Perry-Casa Public Schools District No. 2*, 286 Ark. 170, 690 S.W.2d 349 (1985). There, a math and computer teacher was reassigned to teach only computer science, and following the conclusion of the class, performed only administrative duties. The teacher sought to regain his position as a math teacher. The teacher's contract provided that he would "work as assigned by the Supt. or Prin."*Id*. at 171, 690 S.W.2d at 351. In *Chandler,* our court held that "[t]here is no requirement that a teacher be assigned the duties of his preference or that he consent to transfer or reassignment." *Id*. at 173, 690 S.W.2d at 351. Further, our court noted that "the contract on its face stated the appellant would be assigned

SLIP OPINION

duties by the superintendent or principal" and that his "assignment seems to have retained him in an important and useful capacity." *Id*. at 173–74, 690 S.W.2d at 351. The *Buchanan* court concluded that the *Chandler* case indicated that Buchanan could not legitimately expect to remain a principal under Arkansas law, noting that she had been transferred to an important and useful position and that she received the same salary. *Buchanan*, at 84 F.3d at 1040.

In *Manila School District No. 15 v. White*, 338 Ark. 195, 992 S.W.2d 125 (1999), this court again examined the question presented in *Chandler*. There, the teacher worked as a coach. The teacher's contract provided that he would perform "the duties that are generally performed by a teacher including but not limited to the following specific duties: as assigned by the Superintendent." *White*, 338 Ark. at 197–98, 992 S.W.2d at 127. According to the last paragraph of the contract, labeled "OTHER CONDITIONS OF EMPLOYMENT," the contract provided that $4000 of the base salary was "for a coaching supplement." *Id*. at 198, 992 S.W.2d at 127. White was reassigned to the position of "Alternative School Director/Teacher." The *White* court held that the contract's reference to the "coaching supplement clearly indicated Mr. White's position as a coach for the District." *Id*. at 198, 992 S.W.2d at 127.

In its analysis, the *White* court relied on *Western Grove School District v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994), where the teacher, whose contract indicated he was to perform services as a high-school basketball coach, was divested of his coaching duties, and had his pay reduced by $6000. *Terry*, 318 Ark. at 318–19, 885 S.W.2d at 301. While the school district

SLIP OPINION

argued that the action was merely a reassignment of duties, the court disagreed, noting that his salary was reduced and the duties were curtailed. *Id*. at 321, 885 S.W.2d at 302.

In applying the *Buchanan* analysis, as tempered by *Chandler*, *White*, and *Terry*, we conclude that the circuit court did not err in concluding that the contract in the case at bar created a property right in Cooper's position as principal of Oark schools. Cooper's contract specifically delineated that she would "perform services" as "K–12 Principal, Oark," which was language more specific than that used in *White*. Thus, by the explicit terms of the contract, she was employed as the Oark principal. While the contract, under the contract provision labeled "OTHER CONDITIONS OF EMPLOYMENT" further provided, "Other duties as assigned by the administration," we conclude that this did not mean that she could be removed as Oark principal and placed in a different position at the Kingston campus. Rather, the contract provided that the administration could assign her additional duties in addition to her position as principal of Oark schools. Thus, the assignment clause lacked the primacy of the Buchanan contract. Here, the assignment clause permitted the administration only to assign additional duties to her duties as principal but did not provide that she could be divested of her position as principal of Oark schools.

We are mindful that school boards "shall have authority to assign and reassign or transfer all teachers in schools within their jurisdiction upon the recommendation of the superintendent." Ark. Code Ann. § 6-17-303 (Repl. 2013). Further, the statute relating to the responsibilities of a principal provide that the "principal shall perform such other duties as may

12

be assigned by the superintendent pursuant to the legal rules and regulations of the board of directors." Ark. Code Ann. § 6-17-302(d) (Repl. 2013). Cooper's contract, however, provided otherwise. Accordingly, we conclude that the circuit court did not clearly err in determining that Cooper had a property interest in her position as principal of Oark schools.

In their third point on appeal, appellants contend that the circuit court's award to Cooper was excessive and amounted to an award of "double retirement." In its original judgment, the circuit court awarded to Cooper $45,430 due on her contract with the District, including an annual bonus of $910 less retirement benefits received in the sum of $3,633 per month for six months and less wages earned from other employment in the sum of $1450 for a total of $22,182. The court further awarded the difference in lost earnings from her Teacher Deferred Retirement Option Plan, or T-DROP in the sum of $21,018 had she been employed for the full term of her contract through June 30, 2012, the end of her contract term and date of her intended retirement.

Cooper then filed a motion for reconsideration, arguing that retirement earnings are a collateral source that should not reduce an award of back wages. As an exhibit to the motion, she submitted an email that she had previously introduced into evidence at trial from Michael S. Ray of the Arkansas Teacher Retirement System that indicated that her retirement as of January 1, 2012, was $3,633,26 per month and her T-DROP lump sum was $103,557.89, and that as of July 1, 2012, her retirement would have been approximately $3,733.96 per month and her T-DROP lump sum would have been approximately $124,575.45.

In its amended judgment, the court awarded $45,430 that was due on her contract including an annual bonus of $910 less wages earned from other employment in the sum of $1450. Essentially, the court removed the reduction for retirement benefits received. The court also awarded her the sum of $21,018, the difference in her T-DROP lump sum from January 1, 2012, to July 1, 2012.

On appeal, appellants assert that the monthly retirement benefits Cooper actually received during that six-month period was $3,633 multiplied by 6 for $21,798. Appellants thus contend that Cooper did not sustain a loss in retirement benefits from the reduction of her T-DROP lump sum in the amount of $21,018 from January 1, 2012, to July 1, 2012.

The evidence presented by Cooper established that upon her retirement on January 1, 2012, her T-DROP lump sum was $103,557.89, and had she retired on July 1, 2012, her T-DROP lump sum would have been approximately $124,575.45. Thus, her T-DROP lump sum was reduced in the amount of $21,018 because she retired on January 1, 2012, rather than remaining employed for the full term of her contract through June 30, 2012, the end of her contract term and date of intended retirement. Furthermore, in *Green Forest Public Schools v. Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985), this court stated that it "is a general rule that recoveries from collateral sources do not redound to the benefit of a tortfeasor, even though double recovery for the same damage by the injured party may result." *Id.* at 49, 696 S.W.2d 718 (internal quotation marks omitted). The court held that unemployment compensation was a collateral source and was not to be deducted from a teacher's award of back pay. *Id.* at 49–50,

696 S.W.2d 718. We conclude that the collateral-source rule should likewise apply in the case at bar to retirement benefits paid to Cooper. We are mindful that in *Western Grove School District v. Strain*, 288 Ark. 507, 707 S.W.2d 306 (1986), this court held that a school district failed to prove that a teacher could have obtained other employment that would have mitigated the teacher's damages. We note that in *Stain*, however, the collateral-source rule was not at issue. Accordingly, we affirm the circuit court's award.

*Thompson and Llewellyn, P.A.*, by: *William P. Thompson* and *James M. Llewellyn, Jr.*, for appellants.

*Clark Law Firm PLLC*, by: *Suzanne G. Clark*, for appellee.