Joe McCASKILL *v.* FORT SMITH PUBLIC SCHOOL DISTRICT

95-874                                    921 S.W.2d 945

Supreme Court of Arkansas
Opinion delivered May 28, 1996

*Walker Law Firm*, by: *William J. Kropp, III*, for appellant.

*Thompson & Llewellyn*, by: *James Llewellyn, Jr.*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Joe McCaskill, appeals the letter order of the Sebastian County Circuit Court granting summary judgment to appellee, Fort Smith Public School District, on appellant's complaint under The Teacher Fair Dismissal Act of 1983, Ark. Code Ann. §§ 6-17-1501 to -1510 (1987 & Supp. 1995). The interpretation and construction of The Teacher Fair Dismissal Act is at issue in this case. Jurisdiction of this appeal is therefore properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(3).

Appellant filed a complaint and request for reinstatement with appellee, relying on his 1989-90 contract for employment as secondary-education teacher and seventh-grade coach. Appellant alleged he had been employed as a teacher and coach with appellee since

1977 when he was "reassigned away" from his coaching responsibilities beginning with his 1990-91 contract. According to the complaint, the reason for his 1990 reassignment from coaching duties was intentionally concealed from him and made without notice to him. Appellant alleged in his complaint that it was not until August 23, 1993, while attending an unrelated school board meeting, that he discovered that the reason for his reassignment from coaching duties in 1990 was disciplinary in nature.

Appellee moved for summary judgment. The trial court granted the motion, ruling that appellant entered into a new contract with appellee for the 1990-91 school year and that, having received the benefits of the new contract, he was estopped from asserting his right to lack of notice from appellee. The trial court also ruled that appellant was precluded from recovering against appellee for his failure to file a prompt claim within seventy-five days after notice of the reassignment as required by section 6-17-1510.

■ The standard for review of a summary judgment is whether the evidentiary items presented by the moving party in support of the motion left a question of material fact unanswered and, if not, whether the moving party is entitled to judgment as a matter of law. *National Bank of Commerce* v. *Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996); *Baker* v. *Milam*, 321 Ark. 234, 900 S.W.2d 209 (1995). This court views all proof in the light most favorable to the party opposing the motion, resolving all doubts and inferences against the moving party. *Id.* However, when the movant makes a prima facie showing of entitlement to summary judgment, the respondent must meet that proof with proof showing a genuine issue for trial. *Id.*

Attached to appellee's motion for summary judgment was the 1989-90 contract for employment between appellant and appellee at a rate of approximately $30,260.00, showing appellant's duties as teacher—secondary education and seventh-grade coach. Also attached to appellee's motion was the contract for the 1990-91 school year at a rate of approximately $27,200.00, showing appellant's duties as teacher—secondary education. Finally, attached to the motion was a determination from the EEOC concluding there was no evidence that appellant's February 1990 application for head coach of the ninth-grade football team was denied because of his race.

In his response to appellee's motion for summary judgment, appellant argued there was a genuine issue of material fact involving the intentional concealment of information which would have led appellant to avail himself of the grievance procedure under The Teacher Fair Dismissal Act. Attached to appellant's response were two exhibits: the deposition of Dr. Benny Gooden, superintendent of appellee school district, and appellant's affidavit. In his affidavit, appellant stated that he was not aware that the reason for his reassignment was disciplinary in nature until it was revealed during the August 23, 1993 school board meeting. In his deposition, Dr. Gooden stated that appellant was reassigned from his seventh-grade coaching responsibilities because the then director of athletics was attempting to improve and balance the junior high athletic program. Dr. Gooden explained that, at that point, the athletic director made several reassignments involving several other people. Dr. Gooden stated that he had previously observed appellant in a coaching capacity and witnessed some behavior he considered to be inappropriate. However, Dr. Gooden stated that there was no reason for appellant's reassignment other than the overall changes to the junior high program and that he was not aware whether appellant was given any reason other than the foregoing for his reassignment. Dr. Gooden admitted signing a letter in which he stated that appellant was reassigned from his coaching responsibilities because the overall junior high program would be better served. Dr. Gooden also stated that appellant filed a grievance about his reassignment in September 1993 and was afforded every step in the policy even though he was technically outside the parameters of the policy. Finally, Dr. Gooden stated that he was aware that if the district was terminating a teacher, the statute requires that the teacher be counseled or confronted with the reason for termination.

Appellee replied to appellant's response to the motion for summary judgment and attached the deposition of school board member Michael D. Helm. Mr. Helm was a member of the school board in 1989-90 when appellant's reassignment was made. In his deposition, Mr. Helm discussed the August 23, 1993 school board meeting at which an unrelated discussion between Mr. Helm and appellant turned to appellant's prior coaching behavior. Mr. Helm specifically recalled witnessing appellant drag a ninety-pound child across the football field by his face-mask. Mr. Helm explained that he brought up the incident during the meeting, although he had never previously mentioned it to appellant, as a reaction to some

very pointed accusations about the school board's integrity. Mr. Helm admitted he overreacted.

■ For reversal, appellant first contends there is a genuine issue of material fact involving intentional concealment of information which would have led him to avail himself of the grievance procedure. We disagree and conclude no fraudulent concealment occurred. As the moving party, appellee has demonstrated there were no disputed factual issues as to appellant's 1990-91 contract. While Dr. Gooden indicated he discussed appellant's behavior with the athletic director, he stated the discussion occurred within the context of the proposal to restructure the overall coaching program. Moreover, Dr. Gooden stated unequivocally that the sole reason for appellant's reassignment was the overall change to the junior high program. On this record, appellee has therefore met its burden of showing entitlement to judgment as a matter of law. Appellant has not met his burden of rebutting appellee's proof with proof of a disputed issue of material fact. Appellant has offered no proof whatsoever that the reason for his reassignment was anything other than the restructuring of the overall program. Even Mr. Helm's deposition confirms this, wherein he admitted having personal knowledge of appellant's behavior, but denied having knowledge that the behavior had any connection to the reassignment. In short, appellant has not proved anything was fraudulently concealed from him. His first argument for reversal is without merit.

For his second point for reversal, appellant contends he is entitled to a trial because appellee did not strictly comply with The Teacher Fair Dismissal Act. Appellant argues that appellee did not provide the requisite notice of the 1990 nonrenewal and carried out the reassignment as a nonrenewal thus avoiding the hearing requirements of the Act. Appellant relies heavily on *Western Grove Sch. Dist. v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994), wherein this court held that a school district's actions in reducing a teacher-coach's compensation and coaching duties amounted to a nonrenewal triggering the Act's prior notice requirement. In *Terry*, this court stated that, "what took place was not a reassignment of duties but a nonrenewal of Terry's contract." *Id.* at 321, 885 S.W.2d at 302. This court went on to frame the issue as whether the notice requirements of the Act, specifically section 6-17-1506, had been satisfied. Noting that strict compliance is the standard, this court concluded no prior notice of the nonrenewal had been given to

Terry and held the school board's actions consequently void.

In the present case, appellee distinguishes *Terry* by pointing out that, unlike Terry, appellant signed a superseding contract after the reassignment or nonrenewal in 1990. This is an accurate distinction. When presented with the reassignment or nonrenewal, Terry refused to sign the contract. *See Terry*, 318 Ark. 316, 885 S.W.2d 300. However, in the present case, appellant elected to sign the 1990-91 contract which reassigned his coaching duties. Citing section 6-17-1506(a), appellee contends the 1990-91 contract signed by appellant is a superseding contract that relieves appellee of complying with The Teacher Fair Dismissal Act. We agree.

Section 6-17-1506(a) provides as follows:

> 6-17-1506. *Automatic contract renewal — Notice of nonrenewal.*
>
> (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the next school year succeeding the date of termination fixed therein, which renewal may be made by an endorsement on the existing contract instrument, unless by May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed or, unless during the period of the contract or within ten (10) days after the end of the school year, the teacher shall deliver or mail by registered mail to the board of directors his or her resignation as a teacher, or *unless such contract is superseded by another contract between the parties.* [Emphasis added.]

This is the first time this court has been called upon to interpret the superseding contract portion of The Teacher Fair Dismissal Act. The plain language of the Act clearly indicates a legislative intent that the parties be allowed a mechanism to renegotiate an existing contract or to negotiate a new contract. There is no question that, according to *Terry*, the 1990-91 contract between appellant and appellee would have constituted a nonrenewal of the 1989-90 contract due to the reduction in coaching duties and compensation. However, pursuant to the very terms of section 6-17-1506(a), by appellant's signing the 1990-91 contract, the 1989-90 contract was

superseded and the notice requirements of The Teacher Fair Dismissal Act no longer applied.

Appellant argues in his brief that he did not receive any benefit from signing the new contract, and therefore the doctrine of equitable estoppel cannot be applied to him. That allegation is entirely without merit, primarily because we are not concerned with equitable estoppel; rather, we are concerned with the application of The Teacher Fair Dismissal Act. Appellant simply cannot sign a superseding contract and then claim the protection of the notice and renewal requirements of the Act. Moreover, he cannot sign a superseding contract and then wait well past the Act's limitation period for contesting the nonrenewal. His second argument for reversal is without merit.

The order granting summary judgment to appellee is affirmed.

ROAF, J., concurs.

GLAZE, J., dissents.

JESSON, C.J., and DUDLEY, J., not participating.

TOM GLAZE, Justice, dissenting. I dissent. This Teacher Fair Dismissal case should not have been decided on a motion for summary judgment because a genuine issue of material fact exists. The issue is whether the school district concealed the true reasons for reassigning Joe McCaskill on May 29, 1990, when the district removed him from his coaching duties. The evidence submitted below reflects the district may (or may not) have done so, depending upon which version of facts given by Superintendent Benny Gooden you choose to believe.

Indisputably, McCaskill was advised of a "change in assignment" to teach computer classes. On reassignment, his salary was reduced from $29,731 to $27,200. Gooden stated that no written reason was given McCaskill concerning his reassignment, and he had no knowledge of anyone discussing with McCaskill the fact McCaskill's behavior, while a coach, played a role in the reassignment.

Over three years later, August 23, 1993, McCaskill appeared at a school board meeting involving an unrelated matter when a board member, *Michael Helm*, openly *revealed McCaskill had been removed from his coaching responsibilities because of the abusive behavior he had*

*shown towards school children.* McCaskill said that this was the first time he had been informed of the reason for his earlier reassignment. He subsequently brought this suit against the school district, alleging the district had violated the Teacher Fair Dismissal Act by violating Ark. Code Ann. § 6-17-1504(c) (Repl. 1994), which provides as follows:

> (c) *Whenever a superintendent* or other school administrator charged with the supervision of a teacher *believes or has reason to believe that a teacher is having difficulties or problems* meeting the expectations of the district or its administration *and the* administrator believes or has reason to believe the *problems could lead to termination or nonrenewal of contract, the administrator shall bring the problems and difficulties to the attention of the teacher involved in writing* and shall document the efforts which have been undertaken to assist the teacher to correct whatever appears to be the cause for potential termination or nonrenewal. (Emphasis added.)

The district argues it did not violate § 6-17-1504(c) because the proof shows McCaskill's behavior was not the reason for his reassignment. The evidence is very much in conflict on this issue. Besides Helm's statement already mentioned, Gooden's testimony presented proof that McCaskill's alleged abusive behavior played a role in his reassignment.

For example, Gooden said that his decision to approve reassignment of McCaskill was based upon the recommendations of the director of athletics, Bill Stancil. Gooden stated that he had attended a lot of athletic events and had observed some things McCaskill had done which Gooden thought were inappropriate. He further said his personal observations verified what Stancil "was speaking about." Gooden related that when talking with Stancil about reassigning a coach, Gooden's normal response would be "if there are behaviors that you (Stancil) are not pleased with, can we change those behaviors?" Stancil's response was that you are not going to change those behaviors. Finally, Gooden testified that "[I]t is correct that I had a discussion with Bill Stancil about Joe McCaskill's behavior in the context of reassigning him."

In contrast to the above evidence, Gooden also offered testimony to the effect that McCaskill's behavior had nothing to do with his reassignment. The district relies on Gooden's conflicting

testimony when arguing it had no duty to comply with § 6-17-1504(c), requiring it to bring those behavioral problems and difficulties in writing to McCaskill's attention. Instead, the district stood mute in this regard and chose to treat McCaskill's removal merely as a reassignment. In making this choice, the district claimed it had no duty to comply with the requirements of the Teacher Fair Dismissal Act when contract terminations or nonrenewals are involved.

In sum, whether the district intended to conceal its true reason for removing McCaskill from his coaching duties is a fact question, and, in view of the record before this court now, that question should be decided by a jury. Summary judgment simply is not appropriate in these circumstances.

Finally, the trial court concluded that McCaskill was estopped from asserting his reliance on § 6-17-1504(c) and other statutory notice requirements because he entered a new contract with the district for the 1990-91 year. Of course, before estoppel applies, the party to be estopped must know the facts. *Foote's Dixie Dandy* v. *McHenry, Adm'r*, 270 Ark. 816, 607 S.W.2d 323 (1980). Here, if a jury should decide the district withheld the true reason from McCaskill as to why he was removed and his contract was not renewed, the doctrine of estoppel would be inapplicable because McCaskill was unaware of his termination and the reasons therefore. If he had had this knowledge, he could have availed himself of the remedies afforded under the Teacher Fair Dismissal Act.