SLIP OPINION

Cite as 2015 Ark. App. 544

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–14–463

| | |
|---|---|
| TIMOTHY HOLLIS | **Opinion Delivered** October 7, 2015 |
| APPELLANT | |
| | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | [NO. CV-13-956-7] |
| FAYETTEVILLE SCHOOL DISTRICT NO. 1 of WASHINGTON COUNTY, ARKANSAS; TIM HUDSON; JIM HALSELL; BRYN BAGWELL; JUSTIN EICHMAN; TRACI FARRAH; SUSAN HEIL; STEVE PERCIVAL; VICKI THOMAS; and STEVE JACOBY | HONORABLE DOUG MARTIN, JUDGE |
| | AFFIRMED |
| APPELLEES | |

## RAYMOND R. ABRAMSON, Judge

The school board of the Fayetteville School District terminated the 2011–12 and 2012-13 teaching contracts of Timothy Hollis. Pursuant to the Teacher Fair Dismissal Act (TFDA),[1] Hollis challenged his dismissal in circuit court and added additional claims against the district and the other appellees.[2] The circuit court granted summary judgment to the appellees on all of Hollis's claims. We affirm.

---

[1] The TFDA is codified at Ark. Code Ann. §§ 6-17-1501 to -1510 (Repl. 2013).

[2] Appellee Vicki Thomas was the district superintendent at the time of the events in this case. Appellee Steve Jacoby was the principal of Fayetteville High School (FHS). The other appellees are the individual members of the board.

Hollis had been the speech and debate coach at Fayetteville High School (FHS) for twenty-five years at the time of his 2013 termination. He was also elected a faculty representative to the district's Personnel Policy Committee (PPC). In 2012, Hollis challenged the district's administration concerning professional-development swap days (PDSDs). Teachers attending professional-development sessions were allowed to submit up to twelve hours to replace the two PDSDs that are designated in advance each school year. The administration designated the PDSDs for use in the implementation of the "common core" curriculum standards and an online procedure for requesting PDSDs. Hollis thought the online system deprived teachers of their ability to take PDSDs of their choosing. He also believed that the designation of the PDSDs was a change in policy that amounted to a breach of a teacher's contract.

On May 3, 2012, Hollis sent an email on the district's FHS-all email system advising teachers to use an attached form to request PDSDs instead of going online to do so.[3] The attached form was a version of a form teachers used prior to 2006 to request PDSDs that Hollis had another teacher alter to incorporate the November 2012 dates. The form had been replaced by the online system.

On May 8, 2012, Superintendent Thomas issued Hollis a formal disciplinary reprimand letter, recounting Hollis's actions and containing directions, including that

---

[3] The PDSDs were for the Monday and Tuesday before Thanksgiving in November 2012, the following school year.

SLIP OPINION

Hollis issue an apology to the recipients of his email. The letter concluded with a warning that the failure to follow the directives would result in a recommendation for termination.

Despite the reprimand, Hollis continued with his actions. On May 6, 2012, Hollis sent an email on his district account to his department supervisor criticizing Principal Jacoby as a "bully" and guilty of intimidation and harassment toward female faculty members. The email also asserted that Jacoby had been hired as an "Administration henchman under questionable, nontransparent circumstances." He sent a second email that same day to Thomas, refusing to back down on his position on PDSDs. He also compared himself to the William Wallace-character and Thomas to the "Longshanks" character from the movie *Braveheart*.

This resulted in other reprimands being issued on May 18 and May 24. The May 24 reprimand directed Hollis to issue a written apology to Jacoby for the defamatory comments Hollis made about Jacoby in the May 6 email, directed Hollis to attend an anger-management program at district expense, and prohibited Hollis from being on school property or attending school-related activities until Thomas determined that it was appropriate for Hollis to return to work.

Another incident was memorialized by a disciplinary memo from Thomas to Hollis dated June 20, 2012. The incident involved emails Hollis sent to Lynda Brothers, another FHS teacher, asking her to accompany FHS debate students to the

national debate tournament on Hollis's behalf. Brothers emailed Jacoby for guidance. Jacoby selected Sallie Langford, a former debate coach, to accompany the debate students. Jacoby's selection of Langford prompted Hollis to send an email from his personal account to the parents of the debate students.

On June 29, 2012, Hollis was notified that his termination would be recommended and of his right to request a hearing before the board. The grounds for termination included allegations that Hollis had engaged in insubordinate, inappropriate, and offensive behavior and made defamatory statements; had falsified a district document and distributed it to fellow teachers; had used district funds for an improper purpose; and had made inappropriate use of the district's email system.

By letter dated January 3, 2013, Thomas notified Hollis that she was also recommending the termination of Hollis's 2012–13 contract on the basis that Hollis had allowed his teaching license to expire on December 31, 2012.

The board considered Hollis's termination at its meeting on February 18-19, 2013.[4] After hearing witnesses called by Thomas and Hollis, the board voted unanimously to find that four of the five grounds for termination—that Hollis had engaged in insubordinate, inappropriate, and offensive behavior and made defamatory

---

[4] The parties stipulated that the hearing was being held within the time frame called for by the TFDA because Hollis had requested several continuances of the earlier hearing dates.

SLIP OPINION

statements; had falsified a district document and distributed it to fellow teachers; had made inappropriate use of the district's email system; and had allowed his teaching license to expire—were true.[5] A motion was made and seconded that the board uphold the superintendent's recommendation that Hollis be terminated. The motion passed unanimously. On February 25, 2013, a letter reporting the results of the hearing before the board was sent to Hollis.

On May 10, 2013, Hollis filed a complaint in the Washington County Circuit Court, contesting his termination under the TFDA. He alleged three violations of the TFDA: that the district violated the Act by terminating Hollis's 2012–13 contract for conduct that occurred solely during the term of the 2011–12 contract; that the board considered evidence of a charge (that Hollis had violated the district's grievance policy) not contained in the letters notifying Hollis that his termination was being recommended; and that the grounds presented did not amount to just and reasonable cause for Hollis's termination. He also included claims for breach of contract and civil conspiracy, and demanded a jury trial. Hollis amended his complaint twice, with the second amended complaint adding a claim for violation of the Arkansas Whistle-Blower Act. Appellees answered both amended complaints.

---

[5] There were no votes for finding that the allegation that Hollis used district funds for an improper purpose was true.

Cite as 2015 Ark. App. 544

Appellees filed a motion for summary judgment and accompanying brief in which they asserted that Hollis's sole remedy was to appeal the board's decision under the TFDA, and that appellees had an affirmative defense under the Whistle-Blower Act.

On April 4, 2014, the circuit court, in a two-sentence order, granted summary judgment in favor of appellees on all of Hollis's claims. This appeal followed.

Before addressing the merits of Hollis's arguments, we must take a moment to clarify our standard of review. Although there are many cases setting forth the standard of review under the TFDA, *e.g.*, *Russell v. Watson Chapel Sch. Dist.*, 2009 Ark. 79, 313 S.W.3d 1, we find that they are inapplicable in this case. The cases applying the clearly-erroneous standard usually arise after there has been a trial in the circuit court. The TFDA expressly contemplates that "[a]dditional testimony and evidence may be introduced on appeal to show facts and circumstances showing that the termination or nonrenewal was lawful or unlawful." Ark. Code Ann. § 6-17-1510(d)(1) (Repl. 2013); *see also Jasper Sch. Dist. No. 1 v. Cooper*, 2014 Ark. 390, at 6, 441 S.W.3d 11, 15. That process was not followed in this case because the circuit court decided Hollis's claims on the district's motion for summary judgment. It did so on the record made during the hearing before the board and filed in the circuit court. Here, the circuit court did not, as contemplated by section 6-17-1510(d)(1), reopen the record and receive new

6

evidence, save for an affidavit from Hollis. Therefore, we utilize the familiar summary-judgment standard of review:

> Our standard of review for summary judgment cases is well established. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. Moreover, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence.

*Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006) (citations omitted). The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a conclusion. *Wagner v. Gen. Motors Corp.*, 370 Ark. 268, 258 S.W.3d 749 (2007).

We start by addressing Hollis's various arguments under the TFDA. Hollis first argues that Arkansas law precludes terminating his 2012–13 contract for conduct that occurred during the 2011–12 contract term. *See* Ark. Code Ann. § 6-17-1507(a).

However, that is not what happened. Instead, the board terminated Hollis's 2011–12 contract for insubordination that unquestionably occurred during the term of the contract. And it terminated his 2012–13 contract because he had not timely renewed his required license to teach. There is a distinction between terminating the 2012–13 contract for conduct occurring during the term of the 2011–12 contract and holding the hearing on terminating the 2011–12 contract outside the term of that contract.

Next, Hollis argues that there are genuine issues of material fact as to whether the evidence and reasons presented to the board were sufficient to support his termination under the TFDA. We disagree.

The TFDA provides the grounds for termination of a nonprobationary teacher, as follows:

> A teacher may be terminated only during the term of any contract when there is a reduction in force created by districtwide reduction in licensed staff or for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties, repeated or material neglect of duty, or other just and reasonable cause.

Ark. Code Ann. §§ 6-17-1507(a), 6-17-1510(b)(1). The TFDA requires a just and reasonable cause that is not arbitrary or capricious to support a teacher's termination. Ark. Code Ann. § 6-17-1503(a)(1). One of the reasons adopted by the board for Hollis's termination was that he engaged in insubordinate, inappropriate, and offensive behavior, and made defamatory statements. We have held that insubordination was a just and reasonable cause for termination or nonrenewal of a teacher's contract under

SLIP OPINION

the TFDA. *Caldwell v. Blytheville Sch. Dist.*, 23 Ark. App. 159, 746 S.W.2d 381 (1988). It was not irrational for a superintendent or a principal to expect teachers to comply with her directives and to act in a respectful, courteous, and professional manner. *Id*. We also observed, "This is not to say that a teacher may not disagree with school policy; however, a teacher should not expect to be able to shout at his supervisors, call them liars, accuse them of conspiring against him, and walk out on conferences without action being justified by the board." *Id*. at 164, 746 S.W.2d at 384.

Hollis was not terminated because he disagreed with the new PDSDs policy. Rather, he was terminated because of his insubordination and activities that undermined the administration's efforts to implement the common core standards, including having the PDSDs procedures be completely online. Moreover, Hollis had been given, but not complied with, several directives by Superintendent Thomas.

Hollis also contends that the termination of his 2011–12 contract was in error because the board was allowed to hear evidence concerning a ground (that he had violated the district's grievance policy) that he was not given notice of in the letters recommending his termination. The board did not terminate either contract for this alleged reason; therefore, it requires no further discussion.

Hollis's contract for the 2012–13 school year was also terminated because he had allowed his teaching license to expire. With certain inapplicable exceptions, Arkansas Code Annotated section 6-17-401(a) provides that "no teacher shall be employed in

any public school of the state who is not licensed to teach in the State of Arkansas by a license issued by the State Board of Education." Section 6-17-401(b) provides that a teacher in a public school shall only be compensated from school funds if he has a valid license. On January 3, 2013, Thomas, citing the statute, notified Hollis that his teaching license had expired on December 31, 2012, and that his 2012–13 contract was being terminated as a result. This was the only reason given for the termination of the 2012–13 contract.

Hollis does not challenge the fact that his license had expired; instead, he argues that there are issues of fact as to whether the district sent him reminders that his license was about to expire and whether appellees were at least somewhat responsible for the expiration of his license. We disagree that there are factual disputes that preclude summary judgment.

Gregory Mones, the district's director of human resources, testified before the board that he sent an email in April 2012 to the 145 teachers, including Hollis, whose licenses were to expire at the end of the year. He also said that other email reminders were sent during the fall of 2012. According to Mones, both the district and the Arkansas Department of Education took the position that it was the teacher's responsibility for maintaining and renewing the license. For this reason, he said that neither entity sent anything regarding license expiration directly to the teacher. Mones acknowledged that, if Hollis was not receiving district emails because of his suspension,

he would not have received the reminders. Mones further testified that Hollis had not completed all of the requirements for renewal of his license because he had not completed the required hours of child–maltreatment training, a requirement added after Hollis's last renewal. Also, according to Mones, no application or renewal fee had been submitted by Hollis.

Hollis admitted that he had received the email reminder sent in April 2012. If Hollis failed to receive further reminders because of his suspension, it was because of his own actions, not any failure on the part of the district. Nor is there any proof that Hollis sought to receive reminders via other means during his suspension. Even if the district had failed to send the reminders, it was still Hollis's responsibility to attend the required training necessary to maintain his license. There is no evidence that he did so. Based on section 6-17-401(a), this was sufficient to terminate Hollis's 2012–13 contract.

The circuit court correctly granted summary judgment to appellees on Hollis's claims under the TFDA.

We now turn to Hollis's breach-of-contract claim. He alleged that the district breached both his 2011–12 contract and his 2012–13 contract by terminating those contracts in violation of the TFDA. We disagree.

When a teacher is "aggrieved" by a school board's action in terminating his contract, the recourse is spelled out in the TFDA:

(d)(1) *The exclusive remedy* for any nonprobationary teacher aggrieved by the decision made by the board of directors *shall be an appeal therefrom to the circuit court* of the county in which the school district is located, within seventy-five (75) days of the date of written notice of the action of the board of directors.

Ark. Code Ann. § 6-17-1502(d)(1) (emphasis added). *See Head v. Caddo Hills Sch. Dist.*, 277 Ark. 482, 644 S.W.2d 246 (1982). It is undisputed that Hollis is a nonprobationary teacher, having worked for the district for twenty-five years. Therefore, Hollis does not have a separate common-law cause of action for breach of contract.

Hollis also argues that the circuit court erred in granting summary judgment on his claim for civil conspiracy to commit breach of contract. Here, he alleges that Thomas and Jacoby conspired to breach his contract by implementing changes to the PDSD policy during the pendency of the 2011–12 contract year.

In order to prove a civil conspiracy, Hollis must show a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001); *Mason v. Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969). However, the conspiracy claim fails as a matter of law because a civil conspiracy is not legally possible where an entity and its alleged coconspirators are not separate entities, but rather, stand in either a principal–agent or employer–employee relationship with

SLIP OPINION

the corporation. *Dodson, supra.* Here, Hollis admits that Thomas and Jacoby were agents of the district. Agents may not be held liable for civil conspiracy in the absence of evidence showing that they were acting for their own personal benefit rather than for the benefit of the entity. *Id.* There is no evidence that Thomas or Jacoby were acting for their own personal benefit.

Finally, we turn to Hollis's arguments that the circuit court erred in granting summary judgment on his claim under the Whistle-Blower Act, Ark. Code Ann. §§ 21-1-601 to -609 (Repl. 2004 & Supp. 2013).

Under the Arkansas Whistle–Blower Act, a public employee who reports violations of law or waste of public funds to the appropriate authorities is afforded protection under the Act. *See* Ark. Code Ann. § 21-1-602(8). A public employer is prohibited from taking adverse action against a public employee for a communication that falls within the protection of this subchapter. *See* Ark. Code Ann. § 21-1-603(a)(1). A public school district is a "public employer" within the meaning of the Act. Ark. Code Ann. § 21-1-602(5)(E). Pursuant to section 21-1-602(1), an "adverse action" means to discharge, threaten, or otherwise discriminate or retaliate against a public employee in any manner that affects the employee's employment, including compensation. A whistle blower who is punished by a public employer may seek actual damages and injunctive relief. *See* Ark. Code Ann. § 21-1-604(a). However, "[a] public employer shall have an affirmative defense to a civil action brought by a public

employee under this subchapter if the adverse action taken against a public employee was due to employee misconduct [or] poor job performance . . . unrelated to a communication made pursuant to § 21-1-603." *See* Ark. Code Ann. § 21-1-604(e)(1).

In order for Hollis to prevail on his claim under the Act, he was required to establish, by a preponderance of the evidence, that he suffered an adverse action because he engaged or intended to engage in an activity protected under the Act and that such action was unrelated to his own misconduct or poor job performance. *Barrows v. City of Fort Smith*, 2010 Ark. 73, 360 S.W.3d 117. The burden was on appellees to establish their affirmative defense of employee misconduct unrelated to the communications by a preponderance of the evidence. Ark. Code Ann. § 21-1-604(e)(2).

The undisputed evidence before the board showed that Hollis was terminated for misconduct—insubordination, inappropriate and offensive behavior, and making defamatory statements—rather than for any statements he made under the Whistle-Blower Act. Hollis offered no proof whatsoever of any retaliation or that the reasons given for his termination were a pretext. In the absence of any evidence from Hollis showing pretext, the testimony before the board concerning Hollis's insubordination was sufficient to establish as a matter of law the district's affirmative defense to this claim.

Affirmed.

HARRISON and BROWN, JJ., agree.

*The Williams Law Group, PLC*, by: *Bryce G. Crawford*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Christopher Heller* and *R. Christopher Lawson*, for appellees.