Cite as 2024 Ark. App. 303

# ARKANSAS COURT OF APPEALS
## DIVISIONS II & III
### No. CV-22-592

|  |  |  |
|---|---|---|
| BRYAN MATTOX | | Opinion Delivered May 8, 2024 |
| | APPELLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. 03CV-20-96] |
| V. | | |
| | | HONORABLE DAVID N. LASER, JUDGE |
| MOUNTAIN HOME SCHOOL DISTRICT | | |
| | APPELLEE | REVERSED AND REMANDED |

**WENDY SCHOLTENS WOOD, Judge**

The Mountain Home School District (the District) terminated a portion of Bryan Mattox's 2019–20 teaching contract—specifically, his football-coaching position and associated pay—midway through the school year. Pursuant to the Teacher Fair Dismissal Act (TFDA),[1] Mattox filed a complaint in the Baxter County Circuit Court asserting that the District committed procedural and substantive violations of the TFDA in terminating his coaching position. In a June 17, 2022 order, the circuit court dismissed Mattox's claims with prejudice, finding that they were precluded because he failed to "administratively appeal" the District's decision and that he entered into a subsequent contract with the District that

---

[1]Before it was repealed by the LEARNS Act in June 2023, the TFDA was codified at Arkansas Code Annotated sections 6-17-1501 to -1510 (Repl. 2021). The parties do not dispute the TFDA's applicability to the alleged conduct at issue.

"deleted" his coaching duties and associated pay. On appeal, Mattox contends that the circuit court erred as a matter of law in dismissing his complaint. We agree.

I. *Facts*

The facts in this case are set out in Mattox's first amended complaint and attachments. Pursuant to a written contract, Mattox was employed by the District as a teacher and head football coach for the 2019–20 school year. Mattox was a nonprobationary teacher under the TFDA and held a teaching certificate with a coaching endorsement. In a November 14, 2019 letter, the District's superintendent recommended immediate termination of Mattox's coaching duties along with his coaching stipend and additional contract days. The recommended termination amounted to a reduction in pay of about $20,000. Mattox requested a hearing in accordance with the TFDA, which took place before the District's Board of Directors (the Board) on December 23. The Board voted to uphold the recommendation at the conclusion of the hearing and, on January 8, 2020, issued its written decision to terminate Mattox's coaching position.

On January 20, the District sent Mattox an "Amendment Agreement to Contract" for the 2019–20 school year and requested that he sign and return it by February 20. The agreement provided that Mattox's contract would be reduced from 240 days to 191 days; his stipend would be paid through the remaining paychecks; his last day of work for the 2019–20 school year would be May 22; and he would be paid his four vacation days at his daily rate of pay. In a February 4 email, Mattox informed the District that on the advice of his

attorney, he was not signing the agreement and directed the District to contact his attorney with any questions.

On March 20, Mattox filed a complaint in the circuit court, which was titled "Complaint for Breach of Contract," alleging both procedural and substantive breaches or violations of the TFDA and his teaching contract when the District terminated his coaching position. Mattox also alleged that the District had violated its own policies. The complaint requested that the District's action be set aside and declared void, that Mattox be reinstated as head football coach, and that Mattox be awarded damages in lost pay and benefits.

At the end of March, Mattox received an email from the District asking him to pick up his contract for the 2020–21 school year and to return a signed copy within thirty days. Mattox signed and returned his contract along with an April 15 "reservation of rights" letter explaining that his failure to do so would operate as a resignation. The letter stated that "by signing and returning the enclosed 2020-21 contract I am not waiving my right to claim that this is not the contract to which I am entitled to under the law nor am I agreeing that this contract supersedes any contract I would be otherwise entitled to under the law." Mattox further stated that he was, "[o]ut of an abundance of caution," returning an endorsed copy of his 2019–20 contract as it existed prior to the termination of his coaching duties.[2]

---

[2]Mattox subsequently obtained a head coaching position at the Wynne School District for the 2020–21 school year and tendered his resignation, which was accepted, to the District. Mattox's compensation with the Wynne School District was higher than his compensation would have been under his 2020–21 contract with the District but lower than that under his 2019–20 contract that included his coaching duties and associated pay. The

3

On August 6, the District moved to dismiss Mattox's complaint, alleging that Mattox's claim fails as a matter of law because (1) the TFDA precluded his complaint because he signed a contract for the 2020–21 school year in April 2020 that superseded his 2019–20 contract under the TFDA; and (2) Mattox's "exclusive remedy" was an "administrative appeal" of the District's decision to terminate him under the TFDA, and thus, his "breach of contract" claim was not actionable.

On August 28, Mattox filed a response to the District's motion to dismiss with an attached affidavit. Mattox filed a first amended complaint on September 25. The amended complaint was virtually identical to the original complaint but was labeled "FIRST AMENDED COMPLAINT" and provided that "[t]his Amended Complaint (or alternatively 'appeal' under the TFDA as that term has been interpreted by the Arkansas Courts) is brought pursuant to the TFDA for [the District's] failure to follow or its breach of the TFDA and its own policies." It also included attachments and added a relief-requested section, which essentially set out the statements Mattox had provided in the affidavit attached to his response to the motion to dismiss.

On October 15, the District filed a motion to dismiss the amended complaint in which its argument was based on the same two reasons as in the initial motion to dismiss. The District also argued that to the extent Mattox's amended complaint was an attempt to "bring an administrative appeal" of the District's decision, it was untimely because it was

District concedes that Mattox did not waive his TFDA rights by tendering his resignation and accepting a position with the Wynne School District under less favorable terms.

4

filed beyond the seventy-five-day deadline to appeal under the TFDA. Mattox filed a response on October 28.

In a June 17, 2022 order, the circuit court dismissed Mattox's complaint with prejudice, finding that "Mattox's failure to exhaust his administrative remedies by failing to administratively appeal the decision which terminated his coaching duties and pay attendant thereto, and his entering into a subsequent contract which deleted coaching duties and pay attendant to such duties precludes his recovery sought in the First Amended Complaint." This appeal followed.

## II. *Standard of Review*

In its order of dismissal, the circuit court stated that it had considered the exhibits in making its determination to dismiss Mattox's complaint. Therefore, because the circuit court considered matters outside the pleadings, the motion to dismiss was converted to a motion for summary judgment. *Barrows/Thompson, LLC v. HB Ven II, LP*, 2020 Ark. App. 208, at 12–13, 599 S.W.3d 637, 645–46. A circuit court may grant summary judgment when there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Bryant v. Hendrix*, 375 Ark. 200, 203, 289 S.W.3d 402, 404 (2008). Ordinarily, this court reviews a circuit court's decision to grant summary judgment by examining the record to determine whether any genuine issues of material fact remain. *Phillipy v. Thompson*, 2020 Ark. App. 146, at 4, 597 S.W.3d 108, 111. The parties do not argue that there are any disputed issues of fact for purposes of appeal, and the District states that for the purposes of the appeal, all facts asserted in Mattox's first amended complaint,

5

including the exhibits, are taken as true. When the parties do not dispute the facts on appeal from the grant of summary judgment, this court simply determines whether the appellee was entitled to judgment as a matter of law. *Id.* at 4–5, 597 S.W.3d at 112. As to issues of law, our review is de novo. *Id.*, 597 S.W.3d at 112.

III. *Whether the Circuit Court Erred in Finding that Mattox Failed to Appeal the District's Termination Decision When He Filed His Complaint*

In his first and second points on appeal, Mattox argues that his complaint stated a claim that the District had committed multiple violations of the TFDA and that the circuit court erred in ruling that he failed to bring an "administrative appeal" when he filed his initial complaint. We agree.

Under the TFDA, a teacher may be terminated during the term of his or her contract for a material neglect of duty or other just and reasonable cause. *See* Ark. Code Ann. § 6-17-1507(a) (Repl. 2021). A teacher who receives a notice of recommended termination or nonrenewal may file a written request with the directors of the school district for a hearing. *See* Ark. Code Ann. § 6-17-1509 (Repl. 2021). Arkansas Code Annotated section 6-17-1510 provides in part:

> (b)(1) Any licensed teacher who has been employed continuously by the school district three (3) or more years or who may have achieved nonprobationary status pursuant to § 6-17-1502 may be terminated or the board of directors may refuse to renew the contract of the teacher only when there is a reduction in force created by districtwide reduction in licensed personnel, for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties, repeated or material neglect of duty, or other just and reasonable cause.
>
> . . . .

6

(d)(1) The exclusive remedy for any nonprobationary teacher aggrieved by the decision made by the board of directors shall be an appeal therefrom to the circuit court of the county in which the school district is located, within seventy-five (75) days of the date of written notice of the action of the board of directors.

Ark. Code Ann. § 6-17-1510(b)(1), (d)(1) (Repl. 2021).

Both parties agree that a TFDA claim is a civil action governed by the Arkansas Rules of Civil Procedure. *See Sosbee v. Cnty. Line Sch. Dist.*, 320 Ark. 412, 418, 897 S.W.2d 556, 560 (1995) ("While [the TFDA] provides administrative procedures for pursuit of a nonprobationary teacher's breach of contract claim preceding an appeal to circuit court, once the matter is before a circuit court, no procedures are prescribed other than by the Arkansas Rules of Civil Procedure."). Likewise, it is undisputed that TFDA claims are rooted in contract and are in the nature of a breach-of-contract action for labor or services. *See id.* at 416–17, 897 S.W.2d at 559; *Love v. Smackover Sch. Dist.*, 329 Ark. 4, 7, 946 S.W.2d 676, 678 (1997).

Mattox claims that, in his initial complaint, he pled multiple violations of the TFDA in accordance with the statute and the Arkansas Rules of Civil Procedure.[3] He argues that

---

[3]For example, Mattox pled that he was not terminated for any of the allowed reasons set out in Arkansas Code Annotated section 6-17-1507(a), which include incompetent performance, conduct that materially interferes with the continued performance of the teacher's duties, repeated or material neglect or duties, or any just or reasonable cause. Mattox alleged that, contrary to the District's contention, a win/loss record or number of points scored by a high school football team does not constitute "reasonable and just cause to terminate" a contract. Mattox also alleged that the termination was void under the TFDA because the District failed to substantially comply with provisions of the TFDA and its own policies, including that the notice of termination was inadequate to prepare a defense and that the District considered matters outside the notice in violation of the TFDA, specifically Arkansas Code Annotated section 6-17-1510(c). Mattox asserted that the Board's failure to

7

he was not required to style his complaint as an "administrative appeal" in order to make his TFDA claim actionable, and there was no basis for the circuit court to find that he failed to state a claim or that his complaint did not constitute an appeal within the meaning of section 6-17-1510.

The District contends that Mattox's argument fails to address *Hollis v. Fayetteville School District No. 1 of Washington County*, 2015 Ark. App. 544, at 11–12, 473 S.W.3d 45, 51, in which this court stated that "Hollis does not have a separate common-law cause of action for breach of contract." That case is distinguishable because Hollis not only alleged violations of the TFDA but also made additional claims for "breach of contract and civil conspiracy and demanded a jury trial." After addressing the TFDA claims, we addressed the additional claims, stating that the exclusive remedy for a nonprobationary teacher aggrieved by a decision of the school board is an appeal of the decision to the circuit court. Ark. Code Ann. § 6-17-1502(d)(l). Here, Mattox's complaint alleges claims under the TFDA, not additional claims as in *Hollis*.

Further, in *Dodge v. Lee*, 352 Ark. 235, 100 S.W.3d 707 (2003), the supreme court addressed the issue of whether the circuit court erred in dismissing "cross-complaints" as improper pleadings under Rule 7(a) of the Arkansas Rules of Civil Procedure, which provides the type of pleadings allowed and states that no other pleadings will be allowed. The supreme court cited Arkansas Rule of Civil Procedure 8(f), which provides that "[a]ll

---

substantially comply with section 6-17-1510(c), by considering new reasons at the hearing, rendered the decision void.

8

pleadings shall be liberally construed so as to do substantial justice." *Id.* at 238, 100 S.W.3d at 710. The supreme court explained that it has repeatedly relied on this rule of liberal construction in looking to the substance of a pleading, and reaffirmed its position:

> Courts should not be guided blindly by titles but should look to the substance of motions to ascertain what they seek. It would not be in the interest of justice and fair play to be blindly guided by the title of a motion or pleading. We continue to abide by the well-established rule that a pleading will not be judged entirely by what it is labeled but also by what it contains.

*Id.* at 239, 100 S.W.3d at 710 (quoting *Cornett v. Prather*, 293 Ark. 108, 111, 737 S.W.2d 159, 160–61 (1987)). In reversing and remanding as to particular defendants that had filed cross-complaints, the supreme court held that the circuit court did exactly what is cautioned against and construed the pleading strictly, looking to its style or form without regard to its substance. *Id.* at 239, 100 S.W.3d at 710.

Here, the District agrees that the initial complaint was filed within seventy-five days of the Board's written decision but asserts that Mattox's initial complaint fails to reference the District's January 8, 2020 written decision, asserting that it is the "procedural trigger for a TFDA claim." Mattox's complaint, though titled as a "complaint for breach of contract," alleged violations of the TFDA as a result of the Board's decision to uphold the termination recommendation of the superintendent, and it was filed within seventy-five days of the Board's written decision. Arkansas Code Annotated section 6-17-1510(d)(1) states that "[t]he exclusive remedy for any nonprobationary teacher aggrieved by the decision made by the board of directors shall be an appeal therefrom to the circuit court of the county in which the school district is located, within seventy-five (75) days of the date of written notice of the

9

action of the board of directors." However, the statute does not prescribe any particular form for the appeal to circuit court. Ark. Code Ann. § 6-17-1510(d)(1). The District's argument to the contrary exalts form over substance. In conclusion, we hold that the circuit court erred in finding that Mattox failed to appeal the District's decision that terminated his coaching duties and associated pay.

IV. *Whether the Circuit Court Erred in Finding that Mattox's Entering into a Subsequent Contract with the District that Deleted His Coaching Duties and Pay Precludes His Recovery Under the First Amended Complaint*

In his third and fourth points on appeal, Mattox asserts that the circuit court erred in finding that he waived his claims under the TFDA and that his 2019–20 contract was superseded by signing and returning the 2020–21 contract with reservations.[4] We agree.

Mattox alleged in his amended complaint that the District violated the TFDA when it terminated his coaching position and pay mid-way through his 2019-20 contract. The termination of teacher contracts during the school year is governed by section 6-17-1507, which provides:

> (a) A teacher may be terminated only during the term of any contract . . . for incompetent performance, conduct which materially interferes with the continued

---

[4]In his "reservation of rights" letter attached to his amended complaint, Mattox explained that he did not want a failure to sign to be interpreted as a resignation because he needed to provide for his family the following school year. He also stated in his amended complaint and in his brief on appeal that he was under a duty to mitigate his damages, which prompted him to accept a job with the Wynne School District that paid more than he would have been paid had he continued with the Mountain Home School District for 2020–21. *See, e.g.*, *Sheets v. Dollarway Sch. Dist.*, 82 Ark. App. 539, 549–50, 120 S.W.3d 119, 125 (2003) ("Appellant's refusal to mitigate his damages limits his damages to $650, the difference in what he earned under the 1999–2000 contract and what he could have earned had he accepted the offer of appellee.").

performance of the teacher's duties, repeated or material neglect of duty, or other just and reasonable cause.

Subsections (b) and (c) of section 6-17-1507 set out the notice requirements that must be provided to a teacher.

Mattox also alleged in his amended complaint that he is entitled to damages flowing from those violations for the remainder of the 2019–20 contract and for the 2020–21 contract year and beyond because he signed a new teaching and coaching contract with the Wynne School District that paid him less than what the Mountain Home teaching and coaching position paid him. Mattox's amended complaint does not appear to allege that the District violated the TFDA with respect to the 2020–21 contract that he signed. However, it is clear that Mattox alleged a claim for the improper termination of his 2019–20 contract, specifically referring to section 6-17-1507.

In its motion to dismiss Mattox's complaint, the District attempted to reframe Mattox's cause. The District alleged that because Mattox signed the 2020–21 contract, he was barred from pursuing his TFDA claims relating to the 2019–20 contract under the renewal statute—section 6-17-1506(a)(3). Section 6-17-1506, titled "Contract renewal — Notice of nonrenewal—Rescission," provides:

> (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the next school year succeeding the date of termination fixed therein, which renewal may be made by an endorsement on the existing contract instrument unless:

11

(1) By May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed;

(2) During the period of the contract or within ten (10) calendar days after the end of the school year, the teacher shall send by certified or registered mail to the president, vice president, or secretary of the board of directors of the school district, with a copy to the superintendent, or may deliver in person to the president, vice president, or secretary of the board of directors of the school district, with a copy to the superintendent, his or her resignation as a teacher; or

(3) The contract is superseded by another contract between the parties.

In dismissing Mattox's complaint, the circuit court agreed with the District and found that Mattox's "entering into a subsequent contract [the 2020–21 contract] which deleted coaching duties and pay attendant thereto precludes his recovery[.]" This finding was necessarily made pursuant to section 6-17-1506(a)(3) since it was the basis for the District's argument. As discussed below, we hold that the circuit court erred as a matter of law in making this finding.

This is a termination case, not a nonrenewal case. Mattox was terminated from his coaching duties and part of his associated pay midway through the 2019–20 contract year. Therefore, the termination statute applies. Mattox timely and properly appealed the termination decision.

The renewal statute and its accompanying superseding-contract language found in section 6-17-1506(a)(3) do not apply in this case. Mattox alleged that the District wrongfully terminated his 2019–20 contract under section 6-17-1507; he did not allege that the District

12

violated the TFDA in failing to renew his contract for 2020–21 under section 6-17-1506.[5] The cases cited by the District in support of the circuit court's decision are not applicable to the facts of this case because they involve nonrenewals at the end of the previous contract year for the following school year, not a midyear termination to take place immediately, as in Mattox's case.

In *McCaskill v. Fort Smith Public School District*, 324 Ark. 488, 921 S.W.2d 945 (1996), the supreme court first interpreted the superseding-contract language of section 6-17-1506(a)(3).[6] In that case, McCaskill was presented with a renewal of his teaching contract that contained a reassignment of his coaching duties and reduction of his compensation from his contract for the previous year, which he had signed. The supreme court held that when a teacher signs a superseding contract following a reassignment or nonrenewal, the notice requirement of the TFDA no longer applies. *Id.* at 493–94, 921 S.W.2d at 948. The supreme court further stated that McCaskill "simply cannot sign a superseding contract and then wait well past the Act's limitation period for contesting the nonrenewal."[7] *Id.* at 493–94, 921 S.W.2d at 948.

---

[5]In fact, it is uncertain what "contract" existed or could have been renewed after the District terminated Mattox's 2019–20 contract (or at least a portion thereof) midyear.

[6]In interpreting this section, the supreme court stated that the plain language of the TFDA clearly shows a legislative intent that the parties be allowed a mechanism to renegotiate an existing contract or to negotiate a new contract. *McCaskill*, 324 Ark. at 493, 921 S.W.2d at 948.

[7]McCaskill filed his TFDA claim more than three years after he had signed a superseding contract following his nonrenewal.

In *Metcalf v. Texarkana School District*, 66 Ark. App. 70, 986 S.W.2d 893 (1999), this court affirmed the circuit court's denial of relief to two coaches whose coaching duties had been reassigned for the subsequent school year without a reduction in pay on the basis of *McCaskill*. Both coaches had signed new contracts while they were in the process of appealing their reassignments in the circuit court. At the circuit court, they argued that their reassignments amounted to nonrenewals under the statute. On appeal to this court, the teachers contended at oral argument that the subsequent contracts they signed were "new contracts" rather than "superseding contracts." *Id.* at 73, 986 S.W.2d at 894. However, in affirming, we noted that the teachers conceded in their briefs that they had signed a superseding contract and that the circuit court was required to follow *McCaskill.* We affirmed due to the concession and our inability to overturn a supreme court decision as requested by the teachers. *Id.*, 986 S.W.2d at 894.

*McCaskill* and *Metcalf* involved the nonrenewal of the appellants' contracts for the subsequent school year. They did not involve the termination statute or a midyear termination of a portion of a contract as alleged by Mattox.

The dissent argues that Mattox's case is a nonrenewal case and cites *Western Grove School District v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994), for support. We respectfully disagree. In *Terry*, the school district argued that the TFDA did not apply because its actions in changing Terry's contract were a reassignment of duties and not a nonrenewal; therefore, Terry was not entitled to notice under the TFDA. In affirming, the supreme court held that the changes in Terry's contract amounted to a nonrenewal because they were not on the

14

same terms or for the same salary; thus, the notice provisions of the TFDA applied. The supreme court upheld the circuit court's finding that the school board's actions were void because the school board failed to provide Terry notice before deciding not to renew. *Terry*, 318 Ark. at 321, 885 S.W.2d at 302.

*Terry*, like *McCaskill* and *Metcalf*, involved a teacher's contract being changed only for a subsequent school year. Unlike each of those cases, the District terminated a portion of Mattox's contract midway through the 2019–20 school year, resulting in financial consequences during that same year. The change in Mattox's contract did not occur at the renewal period, which is a significant distinction.

The District could have pursued nonrenewal of Mattox's contract pursuant to section 6-17-1506 by notifying him by May 1 of the contract year that the superintendent was recommending that the contract not be renewed. *See* Ark. Code Ann. § 6-17-1506(a)(1). The District, however, did not do this. Instead, the District pursued a midyear termination of Mattox's coaching duties and associated pay. Mattox's allegations state a claim under the termination statute, section 6-17-1507—not the renewal statute, section 6-17-1506. Therefore, we hold that the circuit court erred in finding that Mattox's signing of the 2020–21 contract precluded his recovery for the midyear termination of his coaching position and pay under the TFDA.[8] Therefore, we reverse and remand for the circuit court to decide

---

[8]The parties focus on Mattox's "reservation of rights" letter that accompanied the 2020–21 contract he signed. The purported "reservation of rights" is not relevant to our analysis of this appeal, which is governed by the plain language of the TFDA.

whether, pursuant to section 6-17-1507, the District violated the TFDA in terminating Mattox from his coaching position during the 2019–20 school year and then decide what damages, if any, flow from the violations.

Reversed and remanded.

VIRDEN, BARRETT, and HIXSON, JJ., agree.

HARRISON, C.J., and BROWN, J., dissent.

**WAYMOND M. BROWN, Judge, dissenting**. I respectfully dissent as the majority misclassifies the facts as a "termination" versus a "nonrenewal" of a contract and disregards precedent.

What indicates a "termination" rather than a "nonrenewal" of a contract has been addressed by our Supreme Court in *Western Grove School District v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994). In *Terry*, under similar facts, the Supreme Court determined that the actions of the school district in divesting a teacher-coach's coaching duties and reducing the associated compensation amounted to a non-renewal. The Supreme Court noted that

> [t]he School District's proposed 1993–94 Teacher Contract for Terry was not on the same terms or for the same salary as the contract for the previous year. The salary was reduced by about 20 percent and the duties were curtailed. Because of this, the case differs markedly from *Chandler v. Perry-Casa Pub. Sch. Dist. No. 2*, 286 Ark. 170, 690 S.W.2d 349 (1985). In that case, the teacher wanted an assignment as a secondary math teacher but was assigned as a computer instructor. No reduction in compensation was at issue. We noted that a teacher could not always be assigned to duties of that teacher's preference and that the assignment by the school district appeared to be reasonable. In the case at bar,

16

we agree with the circuit court that what took place was not a reassignment of duties but a nonrenewal of Terry's contract.[1]

Albeit the court's inquisition was whether the Board's actions were considered a "reassignment" versus a "nonrenewal," this minor distinction does not negate its controlling effect, as the court set out what actions constitute a nonrenewal of a contract. Furthermore, in every similarly situated case of which we are aware, this court has followed that same classification in declaring the comparable events (reducing the coaching duties and supporting pay) as "nonrenewal" and proceeding under Arkansas Code Annotated section 6-17-1506.[2]

As such, because what has occurred here is a nonrenewal of a contract, despite the majority's ploy, the renewal statute and its accompanying superseding-contract language found in section 6-17-1506(a)(3) do apply in this case. To that understanding, our controlling caselaw in *McCaskill v. Fort Smith Public School District*, 324 Ark. 488, 921 S.W.2d 945 (1996), and *Metcalf v. Texarkana School District*, 66 Ark. 70, 986 S.W.2d 893 (1999), directs us to affirm the circuit court's determination as it was correct in dismissing Mattox's appeal because Mattox waived his claims by signing and accepting the 2020–21 contract, which extinguished his rights under the TFDA.

Accordingly, I would affirm.

---

[1] *Terry*, 318 Ark. at 321, 885 S.W.2d at 302

[2] (Repl. 2021).

HARRISON, C.J., joins in this dissent.

*Mitchell, Blackstock, Wright & Alagood, PLLC*, by: *Clayton Blackstock* and *Michael Muskheli*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Marshall S. Ney* and *Katherine C. Campbell*, for appellee.